UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY, ALLSTATE NEW JERSEY INSURANCE COMPANY,  ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY AND ALLSTATE FIRE & CASUALTY INSURANCE COMPANY | Civil Action No. |

Plaintiffs,

vs.

ALLA SMIRNOV A/K/A JENNIFER, MARINA BLUVSTEIN A/K/A LINDA, DAVID LEE HSU, M.D., DANETTE STEFANELLI, D.C., SERITTA KLASS, STEVEN PARCHMENT, RODNEY TERRY, RUSTY MOORE A/K/A ERIC WILLIAMS,  LEONID KAPLAN A/K/A LENNY, A/K/A LYONYA, LESLIE DANTES THEODORE, M.D.,  KHALIKA AYESHA ROWE, D.C., VADIM MILORADOVICH, M.D.,  ILYA SLEPAK, A/K/A ILYUSHA, BORIS GASILO, ABRAHAM PINKHASOV, A/K/A HABI, TATYANA USYK, A/K/A TANYA, JASODA RAMOUTAR, A/K/A ARTIE, LARRY CANTRELL, A/K/A IRA TURKOWITZ,  ST. JOHN MEDICAL CARE, P.C., LENOX WELLCARE MEDICAL, P.C., CB CHIROPRACTIC, LLC, NEW AGE ORTHOPEDIC REHABILITATION, P.C., TDL MEDICAL, P.C.,  LDT MEDICAL, P.C., FIRST AID MEDICAL CARE, P.C., ROSEDALE MEDICAL, P.C., WEST END CHIROPRACTIC, P.C.

Defendants.

**<u>PLAINTIFFS' COMPLAINT</u>**

1

## TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................................4

II.    THE PARTIES ...............................................................................................6

    A.     Plaintiffs.............................................................................................6

    B.     M.D. "Paper Owner" Defendants ........................................................6

    C.     PC Defendants ....................................................................................7

        1.     St. John Medical Care, P.C. ........................................................7

        2.     Lenox Wellcare Medical, P.C. ....................................................8

        3.     CB Chiropractic, LLC. ...............................................................8

        4.     New Age Orthopedic Rehabilitation, P.C.....................................9

        5.     First Aid Medical Care, P.C. .......................................................9

        6.     Rosedale Medical, P.C. ...............................................................9

        7.     TDL Medical, P.C......................................................................10

        8.     LDT Medical, P.C. .....................................................................10

        9.     West End Chiropractic, P.C........................................................11

    D.     Management Defendants ......................................................................11

        1.     The "Lenox Clinics" ...................................................................11

        2.     The "Kaplan Clinics" .................................................................12

    E.     Co-Conspirator Employees of the PC Defendants ................................12

    F.     Co-Conspirator Patient Procurement Defendants..................................13

III.   JURISDICTION AND VENUE ......................................................................14

IV.    NO FAULT LAWS AND LICENSING STATUTES........................................14

V.     SPECIFIC ALLEGATIONS OF THE ILLEGAL CORPORATE PRACTICE OF

MEDICINE .................................................................................................... 17

    A.    Lenox Clinics ................................................................................. 17

    B.    Kaplan Clinics ............................................................................... 20

VI.    CRIMINAL INDICTMENTS ................................................................. 26

    A.    Lenox Clinics ................................................................................. 26

    B.    Kaplan Clinics ............................................................................... 28

VII.    SPECIFIC ALLEGATIONS OF MAIL FRAUD RACKETEERING ACTIVITY .......... 31

VIII.    DEFENDANTS' LAUNDERING OF NO-FAULT PROCEEDS .................... 33

IX.    ALLSTATE'S JUSTIFIABLE RELIANCE ................................................. 34

X.    DAMAGES .......................................................................................... 35

XI.    CAUSES OF ACTION .......................................................................... 36

XII.    DEMAND FOR RELIEF ....................................................................... 73

XIII.    JURY TRIAL DEMAND ....................................................................... 80

The plaintiffs, Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate New Jersey Insurance Company, and Allstate Fire & Casualty Insurance Company (collectively "Allstate" and/or "Plaintiffs"), by its attorneys, Smith & Brink, P.C., allege as follows:

## I.    <u>INTRODUCTION</u>

1.      This is a case about medical professionals for hire, David Lee Hsu, M.D. ("Hsu"), Leslie Dantes Theodore, M.D. ("Theodore"), Danette Stefanelli, D.C. ("Stefanelli"), and Khalika Ayesha Rowe, D.C. ("Rowe"), who working in concert with (a) co-conspirator, non-licensed business persons, Alla Smirnov, a/k/a Jessica ("Smirnov"), Marina Bluvstein, a/k/a Linda ("Bluvstein"), Leonid Kaplan ("Kaplan"), Ilya Slepak ("Slepak"), Boris Gasilo ("Gasilo"), and Abraham Pinkhasov ("Pinkhasov"), (b) fraudulently incorporated medical facilities, St. John Medical Care, P.C. ("St. John"), Lenox Wellcare Medical, P.C. ("Lenox"), CB Chiropractic, LLC ("CB"), New Age Orthopedic Rehabilitation, P.C. ("New Age"), TDL Medical, P.C. ("TDL"), LDT Medical, P.C., ("LTD"), First Aid Medical Care, P.C. ("First Aid"), Rosedale Medical, P.C. ("Rosedale"), and West End Chiropractic, P.C. ("West End") (collectively "PC Defendants"), (c) employees, Vadim Miloradovich, M.D. ("Miloradovich"), Seritta Klass ("Klass"), Tatyana Usyk ("Usyk"), and Jasoda Ramoutar ("Ramoutar"), and (d) "steerers," Steven Parchment ("Parchment"), Rodney Terry ("Terry"), Rusty Moore ("Moore"), and Larry Cantrell ("Cantrell") defrauded Allstate by perpetrating a medical billing fraud scheme in violation of state and federal law.  Each of the individuals and entities listed above conspired with one another to accomplish and/or further the objectives of the scheme detailed herein.

2.    This action seeks actual damages in excess of $2,033,268.36, representing No-Fault insurance payments that were improperly obtained from Allstate through bogus medical professional service corporations that were fraudulently incorporated, and that were owned and controlled by non-licensed laypersons.

3.    The defendants submitted bills for medical treatment and testing purportedly rendered to persons eligible for insurance coverage under Allstate insurance policies.

4.    By this complaint, Allstate brings claims against the defendants seeking money damages for (a) violations of the Federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1962(c)-(d), (b) common law fraud, and (c) unjust enrichment.

5.    In addition, Allstate seeks a declaration that the defendants have no right to receive payment for any unpaid bills whereas: (a) the PC Defendants were fraudulently incorporated, and therefore ineligible to seek or recover "No-Fault" benefits; (b) the PC Defendants engaged in unlawful fee-splitting with non-licensed laypersons; (c) the defendants intentionally and knowingly submitted medical documentation—namely "NF-3" verification forms—representing that the PC Defendants were owned and operated in accordance with New York law when, in fact, the PC Defendants were fraudulently incorporated and thus ineligible to receive No-Fault benefit payments; and (d) defendants engaged in a pervasive pattern and practice of submitting false medical documentation through the U.S. Mail demanding payment from Allstate. See Exhibit 1 annexed hereto and incorporated herein by reference.

6.    All of the acts and omissions of the defendants described throughout this Complaint were undertaken intentionally.

7.      The defendants' insurance fraud scheme was designed to and did, in fact, result in the payment of automobile insurance contract proceed ("No-Fault" benefits) from Allstate to the defendants.

8.      In connection with each claim detailed throughout this Complaint, an Allstate automobile insurance contract was the platform upon which defendants perpetrated their fraudulent scheme.

9.      The defendants knew that the patients identified in this Complaint were eligible for insurance coverage pursuant to automobile insurance policies issued by Allstate.

## II.      THE PARTIES

### A.      PLAINTIFFS

10.     Allstate Insurance Company, Allstate Indemnity Company, Allstate Property and Casualty Insurance Company, Allstate New Jersey Insurance Company, and Allstate Fire and Casualty Insurance Company are wholly owned subsidiaries of The Allstate Corporation, an entity organized to exist under and by virtue of the laws of the State of Delaware.

11.     Allstate Insurance Company, Allstate Indemnity Company, Allstate New Jersey Insurance Company, Allstate Property & Casualty Insurance Company, and Allstate Fire and Casualty Insurance Company maintain their principal places of business in Northbrook, Illinois.

### B.      M.D. "PAPER OWNER" DEFENDANTS

12.     David Lee Hsu, M.D. resides in and is a citizen of the State of New York.

13.     At all relevant times, Hsu was licensed by the State of New York to practice medicine.

14.     Danette Stefanelli, D.C. resides in and is a citizen of the State of New York.

15.    At all relevant times, Stefanelli was licensed by the State of New York to practice chiropractic.

16.    Leslie Dantes Theodore, M.D. resides in and is a citizen of the State of New York.

17.    At all relevant times, Theodore was licensed by the State of New York to practice medicine.

18.    Khalika Ayesha Rowe, D.C. resides in and is a citizen of the State of New York.

19.    At all relevant times, Rowe was licensed by the State of New York to practice chiropractic.

**C.    PC DEFENDANTS**

20.    The PC Defendants are medical professional service corporations and professional limited liability corporations that were controlled by non-licensed layperson owners and employees.

21.    St. John, Lenox, and CB are collectively referred to as the "Lenox Clinics."  At all relevant times, the Lenox Clinics were controlled by Alla Smirnov and Marina Bluvstein.

22.    New Age, TDL, LDT, First Aid, Rosedale, and West End are collectively referred to as the "Kaplan Clinics."  At all relevant times, the Kaplan Clinics were controlled by Leonid Kaplan, Ilya Slepak, Boris Gasilo, and Abraham Pinkhasov.

1.    St. John Medical Care, P.C.

23.    Hsu is the "paper owner" of St. John.

24.    St. John is a New York medical professional service corporation with its principal place of business in the State of New York.

25.    Hsu falsely purports to be the sole owner, officer and director of St. John.

26.     At all relevant times and in direct violation of New York Business Corporation Law §1508, Smirnov and Bluvstein exercised complete control over St. John.

27.     St. John shared the same principal place of business with PC Defendants Lenox and CB at 900 Lenox Road in Brooklyn, New York.

>        2.      Lenox Wellcare Medical, P.C.

28.     Hsu is the "paper owner" of Lenox.

29.     Lenox is a New York medical professional service corporation with its principal place of business in the State of New York.

30.     Hsu falsely purports to be the sole owner, officer and director of Lenox.

31.     At all relevant times and in direct violation of New York Business Corporation Law §1508, Smirnov and Bluvstein exercised complete control over Lenox.

32.     Lenox shared the same principal place of business with PC Defendants St. John and CB at 900 Lenox Road in Brooklyn, New York.

>        3.      CB Chiropractic, LLC

33.     Stefanelli is the "paper owner" of CB.

34.     CB is a New York professional service limited liability company with its principal place of business in the State of New York.[1]

35.     Stefanelli falsely purports to be the sole owner, officer and director of CB.

36.     At all relevant times, and in direct violation of New York Limited Liability Company Law §§ 1203(b) and 1207, Smirnov and Bluvstein exercised complete control over CB.

---

[1] Pursuant to New York Limited Liability Company Law § 1212(b), a professional service limited liability company may end with the abbreviation "LLC" or "PLLC."

37.     CB operated out of 900 Lenox Road in Brooklyn, New York with PC Defendants St John and Lenox during the relevant time period.

4.     New Age Orthopedic Rehabilitation, P.C.

38.     Hsu is the "paper owner" of New Age.

39.     New Age is a New York medical professional service corporation with its principal place of business in the State of New York.

40.     Hsu falsely purports to be the sole owner, officer and director of New Age.

41.     At all relevant times and in direct violation of New York Business Corporation Law §1508, Kaplan, Slepak, Gasilo, and Pinkhasov exercised complete control over New Age.

42.     New Age operated out of 60 West End Avenue, in Brooklyn, New York with PC Defendants TDL and West End during the relevant time period.

5.     First Aid Medical Care, P.C.

43.     Hsu is the "paper owner" of First Aid.

44.     First Aid is a New York medical professional service corporation with its principal place of business in the State of New York.

45.     Hsu falsely purports to be the sole owner, officer and director of First Aid.

46.     At all relevant times and in direct violation of New York Business Corporation Law §1508, Kaplan, Slepak, Gasilo, and Pinkhasov exercised complete control over First Aid.

47.     First Aid shared the same principal place of business with PC Defendants Rosedale and LDT at 133-33 Brookville Boulevard in Rosedale, New York.

6.     Rosedale Medical, P.C.

48.     Hsu is the "paper owner" of Rosedale.

49.     Rosedale is a New York medical professional service corporation with its principal place of business in the State of New York.

50.     Hsu falsely purports to be the sole owner, officer and director of Rosedale.

51.     At all relevant times and in direct violation of New York Business Corporation Law §1508, Kaplan, Slepak, Gasilo, and Pinkhasov exercised complete control over Rosedale.

52.     Rosedale shared the same principal place of business with PC Defendants First Aid and LDT at 133-33 Brookville Boulevard in Rosedale, New York.

            7.      TDL Medical, P.C.

53.     Theodore is the "paper owner" of TDL.

54.     TDL is a New York medical professional service corporation with its principal place of business in the State of New York.

55.     Theodore falsely purports to be the sole owner, officer and director of TDL.

56.     At all relevant times and in direct violation of New York Business Corporation Law §1508, Kaplan, Slepak, Gasilo, and Pinkhasov exercised complete control over TDL.

57.     TDL operated out of 60 West End Avenue, in Brooklyn, New York with PC Defendants New Age and West End during the relevant time period.

            8.      LDT Medical, P.C.

58.     Theodore is the "paper owner" of LDT.

59.     LDT is a New York medical professional service corporation with its principal place of business in the State of New York.

60.     Theodore falsely purports to be the sole owner, officer and director of LDT.

61.     At all relevant times and in direct violation of New York Business Corporation Law §1508, Kaplan, Slepak, Gasilo, and Pinkhasov exercised complete dominion and control over LDT.

9.     West End Chiropractic, P.C.

62.     Rowe is the "paper owner" of West End.

63.     West End is a New York medical professional service corporation with its principal place of business in the State of New York.

64.     Rowe falsely purports to be the sole owner, officer and director of West End.

65.     At all relevant times and in direct violation of New York Business Corporation Law §1508, Kaplan, Slepak, Gasilo, and Pinkhasov exercised complete control over West End.

66.     West End operated out of 60 West End Avenue, in Brooklyn, New York with PC Defendants New Age and TDL during the relevant time period.

D.     **MANAGEMENT DEFENDANTS**

1.     The "Lenox Clinics"

67.     Smirnov and Bluvstein (collectively "Lenox Management Defendants") are non-licensed laypersons who exercised complete ownership, dominion and control over St. John, Lenox, and CB (collectively the "Lenox Clinics").

68.     Alla Smirnov resides in and is a citizen of the State of New York.

69.     Alla Smirnov has never been a licensed medical professional.

70.     Marina Bluvstein resides in and is a citizen of the State of New York.

71.     Bluvstein has never been a licensed medical professional.

2.     The "Kaplan Clinics"

72.     Kaplan, Slepak, Gasilo, and Pinhasov (collectively "Kaplan Management Defendants") are non-licensed laypersons who exercised complete ownership, dominion and control over New Age, TDL, First Aid, Rosedale, LDT and West End.

73.     Leonid Kaplan resides in and is a citizen of the State of New York.

74.     Kaplan has never been a licensed medical professional.

75.     Ilya Slepak resides in and is a citizen of the State of New York.

76.     Slepak has never been a licensed medical professional.

77.     Boris Gasilo resides in and is a citizen of the State of New York.

78.     Gasilo has never been a licensed medical professional.

79.     Abraham Pinkhasov resides in and is a citizen of the State of New York.

80.     Pinkhasov has never been a licensed medical professional.

**E.     CO-CONSPIRATOR EMPLOYEES OF THE PC DEFENDANTS**

81.     The employees of the PC Defendants aided the Management Defendants in illegally operating and controlling the PC Defendants, and siphoning off the revenues generated by the PC Defendants.

82.     Vadim Miloradovich, M.D. resides in and is a citizen of the State of New York.

83.     At all relevant times, Miloradovich was licensed by the State of New York to practice medicine.

84.     Seritta Klass resides in and is a citizen of the State of New York.

85.     Klass has never been a licensed medical professional.

86.     Klass purportedly urged patients to come in for unnecessary treatments, prepared fraudulent patient sign-in sheets, and coached patients.

87.   Tatyana Usyk resides in and is a citizen of the State of New York.

88.   Usyk has never been a licensed medical professional.

89.   Usyk purportedly coached patients and urged them to report to the clinics for unnecessary treatments.

90.   Jasoda Ramoutar resides in and is a citizen of the State of New York.

91.   Ramoutar has never been a licensed medical professional.

92.   Ramoutar purportedly coached patients and urged them to report to the clinics for unnecessary treatments.

**F.   CO-CONSPIRATOR PATIENT PROCUREMENT DEFENDANTS**

93.   Steven Parchment resides in and is a citizen of New York.

94.   Rodney Terry resides in and is a citizen of New York.

95.   Rusty Moore resides in and is a citizen of New York.

96.   Parchment, Terry, and Moore used radio scanners to find accidents and paid hospital employees for information on accident victims to recruit patients for the Lenox clinic.

97.   Parchment, Terry, and Moore contacted these accident victims and misrepresented themselves as hospital employees to direct these patients to the Lenox clinic for treatment.

98.   Parchment, Terry, and Moore also staged false car collisions with the purpose of committing no-fault insurance fraud.

99.   Larry Cantwell resides in and is a citizen of New York.

100.   Cantwell used radio scanners to find accidents and enlisted tow truck operators to recruit victims of collisions to recruit patients for the Kaplan clinics.

### III.   JURISDICTION AND VENUE

101.   Jurisdiction over this action is conferred upon this Court by 28 U.S.C. §1331, §1332, 18 U.S.C. §1962(c)-(d), and 18 U.S.C. §1964.  Supplemental jurisdiction over the state law claims is proper under 28 U.S.C. §1367.

102.   Venue is proper under 28 U.S.C. §1391(c) whereas the vast majority of the wrongful acts known to Allstate as alleged herein with particularity were carried out within the Eastern District of New York.

### IV.   NO-FAULT LAWS AND LICENSING STATUTES

103.   Allstate underwrites automobile insurance in the State of New York.

104.   New York's No-Fault laws are designed to ensure that injured victims of motor vehicle accidents have an efficient mechanism to pay reasonable fees for necessary healthcare services.

105.   Under New York's Comprehensive Motor Vehicle Insurance Reparations Act (N.Y. Ins. Law § 5101, et seq.), and the regulations promulgated pursuant thereto (11 NYCRR § 65, et seq.) (collectively "the No-Fault Laws"), automobile insurers are required to provide Personal Injury Protection Benefits (hereinafter "No-Fault Benefits") to Allstate claimants.

106.   No-Fault Benefits include up to $50,000.00 per Allstate claimant for reasonable expenses that are incurred for necessary healthcare goods and services.

107.   A patient can assign his/her No-Fault Benefits to healthcare providers.

108.   Pursuant to a duly executed assignment, a healthcare provider may submit claims directly to an insurance company and receive payment for necessary medical services rendered, using the claim form required by the New York State Department of Insurance (known as

"Verification of Treatment by Attending Physician or Other Provider of Health Service" or more commonly as an "NF-3").

109.    Pursuant to § 403(d) of the New York State Insurance Law, NF-3s must be verified by the healthcare provider subject to the following warning: "Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime" (hereinafter referred to as the "NF-3 Verification").

110.    Pursuant to New York's No-Fault Laws, fraudulently incorporated professional corporations are not eligible to receive No-Fault Benefits.

111.    In New York, only a licensed medical doctor may: (a) practice medicine; (b) own and control a professional service corporation authorized to practice medicine; (c) employ and supervise other physicians; and (d) derive - absent statutory exceptions not applicable in this case - economic benefit from physician services.

112.    New York's No-Fault Laws provide that "[a] provider of healthcare services is not eligible for reimbursement under section 5102(a) (1) of the Insurance Law if the provider fails to meet any applicable New York State or local licensing requirement necessary to perform such service in New York." *See* 11 NYCRR §65-3.16(a) (12).

113.    Under New York Limited Liability Company Law § 1203, each member of a professional service limited liability company formed to provide medical services must be licensed pursuant to New York Education Law § 131.

15

114.    New York Limited Liability Company Law § 1204 provides that a professional service limited liability company formed to provide medical services may only provide such services through individuals authorized to practice medicine in New York.

115.    Pursuant to New York Limited Liability Company Law § 1207, no individual may be a member of a professional service limited liability company formed to provide medical services, unless that individual is licensed pursuant to New York Education Law § 131.  It also prohibits such member(s) from entering into any agreement, granting proxies, or transferring control to individuals who are not authorized to practice medicine under New York law.

116.    New York Business Corporation Law § 1504 states that no professional service corporation may render professional services except through individuals authorized by law to render such professional services as individuals.

117.    Section 1507 of the Business Corporation Law of New York prohibits a professional service corporation from issuing shares to individuals unless they are "engaged in the practice of such profession in such a corporation."  It also prohibits such shareholder(s) from entering into any agreement, granting proxies or transferring control to individuals who are not authorized by law to practice the profession for which the professional corporation is authorized to practice.

118.    Pursuant to Section 1508 of the Business Corporation Law of New York no individual may be a director or officer of a professional service corporation unless he is authorized by law to practice in this state a profession which such corporation is authorized to practice.

119.    In New York, insurers are not precluded from seeking affirmative recovery against individuals and entities that have violated the above statutes and regulations.

120.    In *State Farm v. Mallela,* 4 N.Y.3d 313 (2005), the New York Court of Appeals upheld 11 NYCRR §65-3.16(a) (12) which excludes payments made to unlicensed providers.

121.    In the matter, *Metroscan Imaging, P.C. v. GEICO*, 823 N.Y.S.2d 818, 821-822 (2006), it was held that an insurer may maintain a cause of action against a fraudulently incorporated medical provider to recover monies paid after April 5, 2002 (11 NYCRR 65-3.16(a)(12)'s effective date).

## V.    SPECIFIC ALLEGATIONS REGARDING THE ILLEGAL CORPORATE PRACTICE OF MEDICINE

### A.    LENOX CLINICS

122.    As discussed below, the defendants, at all times relevant, knew that: (a) the Lenox Clinics were actually owned and controlled by persons not licensed to practice medicine, and (b) the Lenox Clinics were engaged in illegal fee-splitting with non-licensed laypersons.

123.    The defendants implemented a massive fraud scheme through which they billed the New York automobile insurance industry millions of dollars through the Lenox Clinics, which were illegally owned and controlled by non-medical professionals and ineligible for No-Fault Benefits.

124.    To circumvent New York law and to induce the Department of Education to issue a certificate of authority authorizing St. John and Lenox to be organized as a medical professional service corporation, Alla Smirnov and Marina Bluvstein conspired with Hsu to falsely represent that Hsu was the sole shareholder, director and officer of St. John and Lenox.

125.    To circumvent New York law and to induce the Department of Education to issue a certificate of authority authorizing CB to be organized as a medical professional limited liability corporation, Alla Smirnov and Marina Bluvstein conspired with Stefanelli to falsely represent that Stefanelli was the sole shareholder, director and officer of CB.

126.    The ownership and control of the Lenox Clinics by non-licensed laypersons compromised patient care, as the provision of health services by the Lenox Clinics was subject to the pecuniary interests of laypersons as opposed to the exercise of independent medical judgment by a true doctor-owner.

127.    Because the Lenox Clinics were fraudulently incorporated and used as a conduit to illegally split fees with non-licensed laypersons, and not operated or controlled by a licensed medical professional, they were ineligible as a matter of New York law to receive No-Fault Benefits.

128.    To accomplish this scheme, Smirnov and Bluvstein recruited Hsu and Stefanelli and paid them to act as the nominal "owners" of the various Lenox Clinics.

129.    The Lenox Clinics were then used as conduits to collect No-Fault Benefits for healthcare services purportedly rendered through the PC Defendants, which were, in reality, controlled by Smirnov and Bluvstein.

130.    As part of the scheme, Hsu and Stefanelli permitted Smirnov and Bluvstein to exercise total control over the Lenox Clinics, including their No-Fault account receivables.

131.    Hsu played no role in the day-to-day operation, management and/or control of the St. John and Lenox

132.    Stefanelli played no role in the day-to-day operation, management and/or control of CB.

133.    Smirnov and Bluvstein created the Lenox Clinics with different names and taxpayer identification numbers to reduce the likelihood of detection of their fraudulent medical billing scheme by insurers.

134.    Smirnov and Bluvstein periodically changed the name and taxpayer identification numbers of the Lenox Clinics to reduce the likelihood of detection of their fraudulent medical billing scheme by insurers.

135.    From at least 2008 through the present, true ownership and control of St. John, Lenox, and CB has rested entirely with Alla Smirnov and Marina Bluvstein, who used the façade of these PCs to do indirectly what they were forbidden from doing directly, namely: (a) employing physicians and other licensed healthcare professionals; (b) controlling their practices; and (c) charging for (and deriving an economic benefit from) their services.

136.    Since June 9, 2008, Allstate has paid St. John $945,204.82 for the alleged medical treatment of No-Fault insurance claimants. See Exhibit 5, annexed hereto and incorporated herein by reference as if set forth in its entirety.

137.    Because St. John was operated and controlled in violation of New York law, St. John was, at all relevant times, ineligible to receive No-Fault reimbursement. See 11 NYCRR §§65-3.16(a) (12).

138.    Upon information and belief, No-Fault payments paid to St. John were controlled by Smirnov and Bluvstein.

139.    As a result, Smirnov and Bluvstein, persons not entitled to receive No-Fault reimbursement for professional services, were the direct beneficiaries of the No-Fault proceeds collected by St. John from Allstate.

140.    Since October 19, 2009, Allstate has paid Lenox $272,834.81 for the alleged medical treatment of No-Fault insurance claimants. See Exhibit 2, annexed hereto and incorporated herein by reference as if set forth in its entirety.

141.    Because Lenox was operated and controlled in violation of New York law, Lenox was, at all relevant times, ineligible to receive No-Fault reimbursement.  <u>See</u> 11 NYCRR §§65-3.16(a) (12).

142.    Upon information and belief, No-Fault payments paid to Lenox were controlled by Smirnov and Bluvstein.

143.    As a result, Smirnov and Bluvstein, persons not entitled to receive No-Fault reimbursement for professional services, were the direct beneficiaries of the No-Fault proceeds collected by Lenox from Allstate.

144.    Since September 28, 2007, Allstate has paid CB $211,237.61 for the alleged medical treatment of No-Fault insurance claimants.  <u>See</u> Exhibit 4, annexed hereto and incorporated herein by reference as if set forth in its entirety

145.    Because CB was operated and controlled in violation of New York law, CB was, at all relevant times, ineligible to receive No-Fault reimbursement.  <u>See</u> 11 NYCRR §§65-3.16(a) (12).

146.    Upon information and belief, No-Fault payments paid to CB were controlled by Smirnov and Bluvstein.

147.    As a result, Smirnov and Bluvstein, persons not entitled to receive No-Fault reimbursement for professional services, were the direct beneficiaries of the No-Fault proceeds collected by CB from Allstate.

B.    <u>KAPLAN CLINICS</u>

148.    As discussed below, the defendants, at all times relevant, knew that: (a) the Kaplan Clinics were actually owned and controlled by persons not licensed to practice medicine, and (b) the Kaplan Clinics were engaged in illegal fee-splitting with non-licensed laypersons.

149.    The defendants implemented a massive fraud scheme through which they billed the New York automobile insurance industry millions of dollars through the Kaplan Clinics, which were illegally owned and controlled by non-medical professionals and ineligible for No-Fault Benefits.

150.    To circumvent New York law and to induce the Department of Education to issue a certificate of authority authorizing New Age, First Aid and Rosedale to be organized as medical professional service corporations, Leonid Kaplan, Ilya Slepak, Boris Gasilo, and Abraham Pinkhasov conspired with Hsu to falsely represent that Hsu was the sole shareholder, director and officer of New Age, First Aid and Rosedale.

151.    To circumvent New York law and to induce the Department of Education to issue a certificate of authority authorizing TDL and LDT to be organized as medical professional service corporations, Kaplan, Slepak, Gasilo, and Pinkhasov conspired with Theodore to falsely represent that Theodore was the sole shareholder, director and officer of TDL and LDT.

152.    To circumvent New York law and to induce the Department of Education to issue a certificate of authority authorizing West End to be organized as a medical professional service corporation, Kaplan, Slepak, Gasilo, and Pinkhasov conspired with Rowe to falsely represent that Rowe was the sole shareholder, director and officer of West End.

153.    The control of the Kaplan Clinics by non-licensed laypersons compromised patient care, as the provision of health services by the PC Defendants was subject to the pecuniary interests of laypersons as opposed to the exercise of independent medical judgment by a true doctor-owner.

154.    Because the Kaplan Clinics were fraudulently incorporated and used as conduits to illegally split fees with non-licensed laypersons, and not owned or controlled by a licensed

medical professional, they were ineligible as a matter of New York law to receive No-Fault Benefits.

155.    To accomplish this scheme, Kaplan, Slepak, Gasilo, and Pinkhasov recruited Hsu, Theodore and Rowe and paid them to act as the nominal "owners" of the Kaplan Clinics.

156.    The Kaplan Clinics were then used as conduits to collect No-Fault Benefits for healthcare services purportedly rendered through the Kaplan Clinics, which were, in reality, controlled by Kaplan, Slepak, Gasilo, and Pinkhasov.

157.    As part of the scheme, the Kaplan Clinics permitted Kaplan, Slepak, Gasilo, and Pinkhasov to exercise total control over the Kaplan Clinics, including their No-Fault account receivables.

158.    Hsu, Theodore and Rowe played no role in the day-to-day operation, management and/or control of the PC Defendants.

159.    Kaplan, Slepak, Gasilo, and Pinkhasov created the Kaplan Clinics with different names and taxpayer identification numbers to reduce the likelihood of detection of their fraudulent medical billing scheme by insurers.

160.    Kaplan, Slepak, Gasilo, and Pinkhasov periodically changed the name and taxpayer identification numbers of the Kaplan Clinics to reduce the likelihood of detection of their fraudulent medical billing scheme by insurers.

161.    From at least 2007 through the present, true ownership and control of New Age, TDL, LDT, First Aid, Rosedale and West End has rested entirely with Kaplan, Slepak, Gasilo, and Pinkhasov, who used the facade of the Kaplan Clinics to do indirectly what they were forbidden from doing directly, namely: (a) employing physicians and other licensed healthcare

professionals; (b) controlling their practices; and (c) charging for (and deriving an economic benefit from) their services.

162. Since September 19, 2008, Allstate has paid New Age $249,019.61 for the alleged medical treatment of No-Fault insurance claimants. See Exhibit 5, annexed hereto and incorporated herein by reference as if set forth in its entirety.

163. Because New Age was operated and controlled in violation of New York law, New Age was, at all relevant times, ineligible to receive No-Fault reimbursement. See 11 NYCRR §§65-3.16(a) (12).

164. Upon information and belief, No-Fault payments paid to New Age were controlled by Kaplan, Slepak, Gasilo, and Pinkhasov.

165. As a result, Kaplan, Slepak, Gasilo, and Pinkhasov, persons not entitled to receive No-Fault reimbursement for professional services, were the direct beneficiaries of the No-Fault proceeds collected by New Age from Allstate.

166. Since August 5, 2009, Allstate has paid First Aid $201,838.49 for the alleged medical treatment of No-Fault insurance claimants. See Exhibit 6, annexed hereto and incorporated herein by reference as if set forth in its entirety.

167. Because First Aid was operated and controlled in violation of New York law, New Age was, at all relevant times, ineligible to receive No-Fault reimbursement. See 11 NYCRR §§65-3.16(a) (12).

168. Upon information and belief, No-Fault payments paid to First Aid were controlled by Kaplan, Slepak, Gasilo, and Pinkhasov.

169.    As a result, Kaplan, Slepak, Gasilo, and Pinkhasov, persons not entitled to receive No-Fault reimbursement for professional services, were the direct beneficiaries of the No-Fault proceeds collected by First Aid from Allstate.

170.    Since June 18, 2010, Allstate has paid Rosedale $48,622.79 for the alleged medical treatment of No-Fault insurance claimants.  See Exhibit 7, annexed hereto and incorporated herein by reference as if set forth in its entirety.

171.    Because Rosedale was operated and controlled in violation of New York law, Rosedale was, at all relevant times, ineligible to receive No-Fault reimbursement.  See 11 NYCRR §§65-3.16(a) (12).

172.    Upon information and belief, No-Fault payments paid to Rosedale were controlled by Kaplan, Slepak, Gasilo, and Pinkhasov.

173.    As a result, Kaplan, Slepak, Gasilo, and Pinkhasov, persons not entitled to receive No-Fault reimbursement for professional services, were the direct beneficiaries of the No-Fault proceeds collected by Rosedale from Allstate.

174.    Since January 13, 2011, Allstate has paid TDL $64,521.55 for the alleged medical treatment of No-Fault insurance claimants.  See Exhibit 8, annexed hereto and incorporated herein by reference as if set forth in its entirety.

175.    Because TDL was operated and controlled in violation of New York law, Rosedale was, at all relevant times, ineligible to receive No-Fault reimbursement.  See 11 NYCRR §§65-3.16(a) (12).

176.    Upon information and belief, No-Fault payments paid to TDL were controlled by Kaplan, Slepak, Gasilo, and Pinkhasov.

177.   As a result, Kaplan, Slepak, Gasilo, and Pinkhasov, persons not entitled to receive No-Fault reimbursement for professional services, were the direct beneficiaries of the No-Fault proceeds collected by TDL from Allstate.

178.   Since January 13, 2011, Allstate has paid LDT $16,865.94 for the alleged medical treatment of No-Fault insurance claimants. See Exhibit 9, annexed hereto and incorporated herein by reference as if set forth in its entirety.

179.   Because LDT was operated and controlled in violation of New York law, LDT was, at all relevant times, ineligible to receive No-Fault reimbursement. See 11 NYCRR §§65-3.16(a) (12).

180.   Upon information and belief, No-Fault payments paid to LDT were controlled by Kaplan, Slepak, Gasilo, and Pinkhasov.

181.   As a result, Kaplan, Slepak, Gasilo, and Pinkhasov, persons not entitled to receive No-Fault reimbursement for professional services, were the direct beneficiaries of the No-Fault proceeds collected by LDT from Allstate.

182.   Since September 28, 2007, Allstate has paid West End $23,122.74 for the alleged medical treatment of No-Fault insurance claimants. See Exhibit 10, annexed hereto and incorporated herein by reference as if set forth in its entirety.

183.   Because West End was operated and controlled in violation of New York law, West End was, at all relevant times, ineligible to receive No-Fault reimbursement. See 11 NYCRR §§65-3.16(a) (12).

184.   Upon information and belief, No-Fault payments paid to West End were controlled by Kaplan, Slepak, Gasilo, and Pinkhasov.

185. As a result, Kaplan, Slepak, Gasilo, and Pinkhasov, persons not entitled to receive No-Fault reimbursement for professional services, were the direct beneficiaries of the No-Fault proceeds collected by West End from Allstate.

## VII.   **CRIMINAL INDICTMENTS**

### A.   **LENOX CLINICS**

186. In October 2011, Smirnov, Bluvstein, Hsu, Stefanelli, Klass, Parchment, Terry, and Moore were indicted in the United States District Court in the Southern District of New York, in connection with an elaborate scheme to defraud No-Fault insurance carriers ("Lenox Indictment"). See Criminal Indictment annexed hereto at Exhibit 11; United States Attorney's Office of the Southern District of New York Press Release dated October 20, 2011 annexed hereto at Exhibit 13.

187. According to the Lenox Indictment, Smirnov and Bluvstein, non-licensed laypersons, and their co-conspirators, controlled and operated the medical professional service corporations, St. John Medical Care, P.C., Lenox Wellcare Medical, P.C., and other entities located at 900 Lenox Road in Brooklyn, New York.

188. According to the Lenox Indictment, to create the appearance that the clinics located at the 900 Lenox Road location were owned and operated legitimately, Smirnov and Bluvstein recruited different doctors to serve as the nominal "paper" owners.

189. According to the Lenox Indictment, these nominal paper owners were merely salaried employees that took direction from Smirnov and Bluvstein.

190. According to the Lenox Indictment, each time a physician-owner left, Smirnov and Bluvstein recruited a new physician-owner and incorporated the clinic under a new name, including St. John Medical Care, P.C., Lenox Wellcare Medical, P.C., and others.

191.    According to the Lenox Indictment, regardless of the clinic name changes, Smirnov and Bluvstein and their co-conspirators continued to operate, manage and direct the operations of the clinics operating out of the 900 Lenox Road, Brooklyn, New York address.

192.    According to the Lenox Indictment, these clinics were medical fraud mills, routinely billing automobile insurance companies under the no-fault program for medical treatments that were not provided or were not medically necessary.  These clinics were not legitimate medical care clinics specializing in the treatment of accident victims, as was represented.

193.    According to the Lenox Indictment, the patients of these clinics are alleged to have suffered little or no injuries from the accidents, and yet, they received weeks or months of medically unnecessary tests and treatments.  Treatment and tests included acupuncture, physical therapy, biofeedback training, aquatic therapy, chiropractic adjustment, and medical resonance imaging scans ("MRIs").

194.    According to the Lenox Indictment, Smirnov and Bluvstein paid Parchment, Terry, and Moore to be "runners" for the clinics by recruiting patients in exchange for a fee per patient recruited.

195.    According to the Lenox Indictment, these runners found the patients by using radio scanners to locate accidents, paying hospital employees for patient information, and by staging and causing accidents.

196.    According to the Lenox Indictment, in some instances the runners impersonated hospital employees and called patients to direct them to the clinics for treatment.

197.    According to the Lenox Indictment, Seritta Klass, an office worker and receptionist at the clinics coached patients on how to describe their injuries to maximize the legal

settlements and insurance payments. According to the Indictment, in return for their participation in the scheme, patients received payments made to them by the clinics or the runners, in addition to the possibility of receiving settlements through their fraudulent injury claims.

198.  According to the Lenox Indictment, when speaking to insurance companies, Smirnov used the alias of "Jennifer" and Bluvstein used the alias of "Linda."

199.  According to the Lenox Indictment, David Lee Hsu, Danette Stefanelli, and the other practitioners who worked at these clinics intentionally subjected patients to unnecessary medical treatments and examinations with the sole purpose of increasing fraudulent billings to insurance companies to increase the clinics' profits. According to the Indictment, the testing and treatments were not done for the purpose of diagnosing and treating medical problems.

### B.  KAPLAN CLINICS

200.  In October 2011, Kaplan, Rowe, Miloradovich, Slepak, Gasilo, Pinkhasov, Usyk, Ramoutar, and Cantrell were indicted in the United States District Court in the Southern District of New York, in connection with an elaborate scheme to defraud No-Fault insurance carriers ("Kaplan Indictment"). See Criminal Indictment annexed hereto at Exhibit 12; United States Attorney's Office of the Southern District of New York Press Release dated October 20, 2011 annexed hereto at Exhibit 13. According to the Indictment, Kaplan, Slepak, Gasilo, and Pinkhasov were the true owners of New Age Orthopedic Rehabilitation, P.C., First Aid Medical Care, P.C., Rosedale Medical, P.C., TDL Medical, P.C., LTD Medical, P.C. and West End Chiropractic, P.C. in violation of the law.

201.   Kaplan, Slepak, Gasilo, and Pinkhasov were indicted for the control and operation of several no-fault medical clinics including clinics operating at 60 West End Avenue in Brooklyn, and later at 2546 E. 17th Street in Brooklyn, New York.

202.   According to the Kaplan Indictment, to create the appearance that the clinics located at 60 West End Avenue in Brooklyn, and later at 2546 E. 17th Street in Brooklyn were owned and operated legitimately, Kaplan, Slepak, Gasilo and Pinkhasov recruited different doctors to serve as the nominal "paper" owners.

203.   According to the Kaplan Indictment, these nominal paper owners were merely salaried employees that took direction from Kaplan, Slepak, Gasilo, and Pinkhasov.

204.   According to the Kaplan Indictment, each time a physician-owner left, Kaplan, Slepak, Gasilo, and Pinkhasov recruited a new physician-owner and reincorporated that clinic under a new name.

205.   According to the Kaplan Indictment, the clinic located at 60 West End Avenue, Brooklyn, New York, and then at 2546 E. 17th Street, Brooklyn, New York housed medical professional corporations under different names such as "New Age Orthopedic Rehabilitation, P.C.," "TDL Medical, P.C." and others.

206.   According to the Kaplan Indictment, the clinic located at 133-33 Brookville Boulevard in Rosedale, New York was incorporated as "First Aid Medical Care, P.C.," "Rosedale Medical, P.C.," and "LTD Medical, P.C."

207.   Regardless of the clinics' name changes, Kaplan, Slepak, Gasilo, and Pinkhasov always maintained operational control over the clinics.

208.   According to the Kaplan Indictment, these clinics were medical fraud mills, routinely billing automobile insurance companies under the no-fault program for medical

treatments that were not provided or were not medically necessary. According to the Indictment, these clinics were not legitimate medical care clinics specializing in the treatment of accident victims, as was represented.

209. According to the Kaplan Indictment, the patients of these clinics are alleged to have suffered little or no injuries from the accidents, and yet, they received weeks or months of medically unnecessary tests and treatments. According to the Indictment, treatment and tests included acupuncture, physical therapy, chiropractic adjustment, and medical resonance imaging scans ("MRIs").

210. According to the Kaplan Indictment, Kaplan, Slepak, Gasilo, and Pinkhasov paid Cantrell, and others not named, to be "runners" for the clinics by recruiting patients in exchange for a fee per patient recruited. According to the Indictment, the runners found the patients by using radio scanners to locate accidents and by recruiting tow truck operators to recruit victims of automobile accidents.

211. According to the Kaplan Indictment, Usyk and Ramoutar, were office workers and receptionists at the clinics that coached patients and pressed for patients to come in to the clinics for unnecessary treatments. According to the Indictment, in return for their participation in the scheme, patients received payments made to them by the clinics or the runner, in addition to the possibility of receiving settlements through their fraudulent injury claims.

212. According to the Kaplan Indictment, Theodore intentionally subjected patients to unnecessary medical treatments and examinations with the sole purpose of increasing fraudulent billings to insurance companies to increase the clinics' profits. The testing and treatments were not done for the purpose of diagnosing and treating medical problems.

213.    According to the Kaplan Indictment, Rowe intentionally subjected patients to unnecessary medical treatments and examinations with the sole purpose of increasing fraudulent billings to insurance companies to increase the clinics' profits.  The testing and treatments were not done for the purpose of diagnosing and treating medical problems.

214.    According to the Kaplan Indictment, Miloradovich and the other practitioners who worked at these clinics intentionally subjected patients to unnecessary medical treatments and examinations with the sole purpose of increasing fraudulent billings to insurance companies to increase the clinics' profits.  The testing and treatments were not done for the purpose of diagnosing and treating medical problems.

215.    According to the Kaplan Indictment, other unnamed practitioners who worked at these clinics intentionally subjected patients to unnecessary medical treatments and examinations with the sole purpose of increasing fraudulent billings to insurance companies to increase the clinics' profits.  The testing and treatments were not done for the purpose of diagnosing and treating medical problems.

## VII.    SPECIFIC ALLEGATIONS OF MAIL FRAUD RACKETEERING ACTIVITY

216.    The defendants created, prepared and submitted false medical documentation and intentionally violated the laws of the United States by devising and intending to devise schemes to defraud and obtain money and property by means of false and fraudulent pretenses in representations, and by placing or causing to be placed, in a post office and/or authorized depository for mail matter, things to be sent and delivered by the United States Postal Service, in violation of 18 U.S.C. §1341 (mail fraud) for the purpose of executing such fraudulent schemes and attempting to do so.

217.   Unless otherwise pled to the contrary, all documents, notes, reports, health insurance claim forms, medical diagnoses, CPT Code tally sheets, referrals, letters and request for payments in connection with the insurance claims referenced throughout this pleading traveled through the U.S. Mail.

218.   Every automobile insurance claim detailed within, involved at least one use of the U.S. Mail, including the mailing of, among other things, the notice of claim, initial policies, insurance payments, claims settlement checks and the return of the cancelled settlement drafts to the financial institution(s) from which the draft(s) were drawn, as well as return of settlement draft duplicates to the insurance carrier's home office for filing.

219.   The defendants either personally used the mails to further their fraudulent scheme by causing medical bills and records from illegal clinics to be mailed to Allstate and/or counsel for claimants and/or acted with knowledge that the use of the mails would follow in the ordinary course of business.

220.   The defendants fraudulently reported that the clinics were legitimately organized pursuant to the laws of the state of New York.

221.   The defendants knew that their offices, a patient, a claimant, an insurance carrier, patient's attorney, other medical provider or the plaintiff would use the mails in connection with each of the fraudulent claims, including issuing payments based upon defendants' fraudulent documentation.

222.   Allstate estimates that the defendants' fraudulent medical billing scheme generated hundreds of mailings.  A table highlighting selected examples of mail fraud arising from the defendants' patient/business files is annexed hereto at Exhibit 1.

## VIII.   DEFENDANTS' LAUNDERING OF NO-FAULT PROCEEDS

223.    At all relevant times, defendants engaged in the illegal laundering of No-Fault proceeds collected by the fraudulently-incorporated PC Defendants in violation of 18 U.S.C. § 1956 (laundering of monetary instruments).

224.    The defendants conducted a number of transactions involving the No-Fault proceeds collected by the PC Defendants.

225.    The PC Defendants transferred substantial sums of No-Fault proceeds to the Management Defendants in violation of 18 U.S.C. § 1956.

226.    Upon information and belief, once the proceeds were in the Management Companies' bank accounts, the Management Defendants caused payments to be issued to "steerers" for the referral of purported auto accident victims/patients.

227.    At all relevant times, defendants intentionally engaged in—and benefitted from—the money laundering activity described herein.

228.    The defendants intentionally conducted such transactions knowing that the transactions were designed to: (a) promote the carrying on of the defendants' medical billing and fraud scheme; (b) conceal and/or disguise the nature, source, ownership, and/or control of the proceeds of the defendants' medical billing and mail fraud scheme; and (c) evade and defeat transaction and/or tax reporting requirements under federal and state law, including but not limited to, those proscribed under 26 U.S.C. § 7201, *et. seq.*

229.    In doing so, the defendants committed numerous violations of 18 U.S.C. § 1956 in furtherance of the instant medical billing scheme.

## IX.   ALLSTATE'S JUSTIFIABLE RELIANCE

230.   Through the submission of medical records, including NF-3 forms, Hsu, Theodore, Stefanelli, and Rowe, certified and represented that St. John Medical Care, P.C., Lenox Wellcare Medical, P.C., CB Chiropractic, LLC, New Age Orthopedic Rehabilitation, P.C., First Aid Medical Care, P.C., Rosedale Medical, P.C., TDL Medical, P.C., LDT Medical, P.C., and West End Chiropractic, P.C. were incorporated and operated in compliance with New York law.

231.   As licensed medical professionals, Hsu, Theodore, Stefanelli and Rowe were obligated—legally and ethically—to act with honesty, integrity, and in accordance with their professional oath and pledge.

232.   Each claim submitted to Allstate by St. John Medical Care, P.C., Lenox Wellcare Medical, P.C., CB Chiropractic, LLC, New Age Orthopedic Rehabilitation, P.C., First Aid Medical Care, P.C., Rosedale Medical, P.C., TDL Medical, P.C., LDT Medical, P.C., and West End Chiropractic, P.C. was verified pursuant to Insurance Law §403.

233.   At the time St. John Medical Care, P.C., Lenox Wellcare Medical, P.C., CB Chiropractic, LLC, New Age Orthopedic Rehabilitation, P.C., First Aid Medical Care, P.C., Rosedale Medical, P.C., TDL Medical, P.C., LDT Medical, P.C., and West End Chiropractic, P.C. submitted patient invoices for payment, Allstate reasonably believed that the actions of Hsu, Theodore, Stefanelli, and Rowe conformed to applicable laws, and that each was bound by his or her avowed ethical obligations.

234.   To induce Allstate to promptly pay the charges submitted by St. John Medical Care, P.C., Lenox Wellcare Medical, P.C., CB Chiropractic, LLC, New Age Orthopedic Rehabilitation, P.C., First Aid Medical Care, P.C., Rosedale Medical, P.C., TDL Medical, P.C.,

LDT Medical, P.C., and West End Chiropractic, P.C. patient invoices, defendants submitted—or caused to be submitted—to Allstate NF-3 forms which represented that the clinics were owned and operated by licensed medical professionals in compliance with New York law.

235.   Allstate is required, under statutory and contractual obligations, to promptly and fairly process claims within 30 days.

236.   The facially valid documents submitted to Allstate in support of the charges at issue—combined with the material misrepresentations described above—were designed to—and in fact did—induce Allstate to rely on the accuracy of such documents.

237.   In reliance on the representations of Hsu, Theodore, Stefanelli, and Rowe, Allstate paid money to these illegally operated and controlled entities to its detriment—monies that Allstate otherwise would not have paid if Hsu, Theodore, Stefanelli, Rowe, and the PC Defendants had provided true and accurate information.

238.   As a result, Allstate paid in excess of $2,033,268.36 based upon the defendants' intentional violation of New York Law.

## X.   **DAMAGES**

239.   The defendants' pattern of fraudulent conduct injured Allstate in its business and property by reason of the aforesaid violations of state and federal law.  Although it is not necessary for Allstate to calculate damages with specificity at this stage in the litigation (whereas Allstate's damages continue to accrue), Allstate's injury includes, but is not limited to, compensatory damages for:

(a)   payments in connection with first-party ("No-Fault") claims to St. John Medical Care, P.C. in excess of $945,204.82.  See table annexed hereto at Exhibit 2.

(b)   payments in connection with first-party ("No-Fault") claims to Lenox Wellcare Medical, P.C. in excess of $272,834.81.  See table annexed hereto at Exhibit 3.

(c)     payments in connection with first-party ("No-Fault") claims to CB Chiropractic, LLC in excess of $211,237.61. See table annexed hereto at Exhibit 4.

(d)     payments in connection with first-party ("No-Fault") claims to New Age Orthopedic Rehabilitation, P.C. in excess of $249,019.61.  See table annexed hereto at Exhibit 5.

(e)     payments in connection with first-party ("No-Fault") claims to First Aid Medical Care, P.C. in excess of $201,838.49.  See table annexed hereto at Exhibit 6.

(f)     payments in connection with first-party ("No-Fault") claims to Rosedale Medical, P.C. in excess of $48,622.79.  See table annexed hereto at Exhibit 7.

(g)     payments in connection with first-party ("No-Fault") claims to TDL Medical, P.C. in excess of $64,521.55.  See table annexed hereto at Exhibit 8.

(h)     payments in connection with first-party ("No-Fault") claims to LDT Medical, P.C. in excess of $16,865.94.  See table annexed hereto at Exhibit 9.

(i)     payments in connection with first-party ("No-Fault") claims to West End Chiropractic, P.C. in excess of $23,122.74.  See table annexed hereto at Exhibit 10.

(j)     expenses incurred to review, adjust, investigate, litigate and pay the false and fraudulent claims created by the defendants and supported defendants' operation of enterprises through a pattern of illegal activity.

## XI.    CAUSES OF ACTION

### COUNT I
### VIOLATIONS OF 18 U.S.C. §1962(c)
### RACKATEER INFLUENCED AND CORRUPT ORGANIZATION ACT
### (Against Alla Smirnov, Marina Bluvstein, David Lee Hsu, M.D., Vadim Miloradovich, M.D., Seritta Klass, Steven Parchment, and Rodney Terry)

240.    Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth above as if fully set forth herein.

241.    In connection with each of the claims identified in plaintiffs' Complaint, Alla Smirnov, Marina Bluvstein, David Lee Hsu, M.D., Vadim Miloradovich, M.D., Seritta Klass, Steven Parchment, and Rodney Terry (collectively "Count I Defendants") intentionally caused to

be prepared and mailed false medical documentation in connection with Allstate insurance claims, in furtherance of their scheme to defraud.

242.    The Count I Defendants employed one or more mailings to demand and/or receive payment on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 1.

243.    Among other things, NF-3 forms, medical billing invoices, medical reports, applications for insurance, and premium checks were routinely delivered to Allstate through the U.S. Mail.

244.    Policies of insurance were delivered to insureds through the U.S. Mail.

245.    Medical reports and invoices were delivered to Allstate through the U.S. Mail. Payments to defendants traveled via the U.S. Mail.

246.    As documented above, the Count XI Defendants repeatedly and intentionally submitted NF-3 forms and other medical documentation to Allstate for medical expenses and/or services that were purportedly performed at St. John Medical Care, P.C., to collect payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

247.    As a result of, and in reasonable reliance upon these misleading documents and misrepresentations, Allstate, by its agents and employees, issued drafts to St. John Medical Care, P.C., for the benefit of the Count I Defendants, that would not otherwise have been paid.

248.    The Count I Defendants' pattern of fraudulent claims, each appearing legitimate on their face, also prevented Allstate from discovering the fraudulent scheme for a long period of time, thus enabling them to continue without being detected.

249.     The acts set forth above constitute indictable offenses pursuant to 18 U.S.C. §1341 (mail fraud).

250.     By filing numerous fraudulent claims in an ongoing scheme, the Count I Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. §1962(c).

251.     The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to St. John Medical Care, P.C. for the benefit of the Count I Defendants.

252.     Allstate (and all plaintiffs individually) is in the business of writing insurance and paying claims in the State of New York.  Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

253.     St. John Medical Care, P.C. constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

254.     The Count I Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

255.     Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count I Defendants' conduct.

256.     The Count I Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

257.     By virtue of the Count I Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims

submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT II
## CONSPIRACY UNDER 18 U.S.C. §1962(d)
**(Against Alla Smirnov, Marina Bluvstein, David Lee Hsu, M.D., Vadim Miloradovich, M.D., Seritta Klass, Steven Parchment, and Rodney Terry)**

258.    Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth above as if fully set forth herein.

259.    Defendants Smirnov, Bluvstein, Hsu, Miloradovich, Klass, Parchment, and Terry conspired with each other to violate 18 U.S.C. § 1962(c) through the operation of St. John Medical Care, P.C. ("St. John").

260.    Defendants Smirnov, Bluvstein, Hsu, Miloradovich, Klass, Parchment, and Terry each agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(c) by agreeing to conduct the affairs of St. John by means of a pattern of racketeering activity, including numerous acts of mail fraud as set forth in Exhibit 1, and through the preparation and/or submission of fraudulent insurance claim documents, including NF-3 forms, to Allstate.

261.    The purpose of the conspiracy was to obtain No-Fault payments from Allstate on behalf of St. John even though St. John, as a result of defendants' unlawful conduct, was not eligible to collect such No-Fault payments.

262.    Smirnov, Bluvstein, Hsu, Miloradovich, Klass, Parchment, and Terry were aware of this purpose, and agreed to take steps to meet the conspiracy's objectives, including the creation of insurance claim documents containing material misrepresentations and/or material omissions.

263.    Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the defendants' unlawful conduct described herein.

264.    By virtue of this violation of 18 U.S.C. § 1962(d), defendants, Smirnov, Bluvstein, Hsu, Miloradovich, Klass, Parchment, and Terry, are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the defendants identified, three times the damages sustained by reason of the claims submitted by the defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT III
## VIOLATIONS OF 18 U.S.C. §1962(c)
## RACKATEER INFLUENCED AND CORRUPT ORGANIZATION ACT
### (Against Alla Smirnov, Marina Bluvstein, David Lee Hsu, M.D., Seritta Klass, Steven Parchment, Rodney Terry, and Rusty Moore)

265.    Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth above as if fully set forth herein.

266.    In connection with each of the claims identified in plaintiffs' Complaint, Alla Smirnov, Marina Bluvstein, David Lee Hsu, M.D., Seritta Klass, Steven Parchment, Rodney Terry, and Rusty Moore (collectively "Count III Defendants") intentionally caused to be prepared and mailed false medical documentation in connection with Allstate insurance claims, in furtherance of their scheme to defraud.

267.    The Count III Defendants employed one or more mailings to demand and/or receive payment on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 1.

268.    Among other things, NF-3 forms, medical billing invoices, medical reports, applications for insurance, and premium checks were routinely delivered to Allstate through the U.S. Mail.

269.    Policies of insurance were delivered to insureds through the U.S. Mail.

270.    Medical reports and invoices were delivered to Allstate through the U.S. Mail. Payments to defendants traveled via the U.S. Mail.

271.    As documented above, the Count III Defendants repeatedly and intentionally submitted NF-3 forms and other medical documentation to Allstate for medical expenses and/or services that were purportedly performed at Lenox Wellcare Medical, P.C., to collect payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

272.    As a result of, and in reasonable reliance upon these misleading documents and misrepresentations, Allstate, by its agents and employees, issued drafts Lenox Wellcare Medical, P.C., for the benefit of the Count III Defendants, that would not otherwise have been paid.

273.    The Count III Defendants' pattern of fraudulent claims, each appearing legitimate on their face, also prevented Allstate from discovering the fraudulent scheme for a long period of time, thus enabling them to continue without being detected.

274.    The acts set forth above constitute indictable offenses pursuant to 18 U.S.C. §1341 (mail fraud).

275.    By filing numerous fraudulent claims in an ongoing scheme, the Count III Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. §1962(c).

276.   The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to Lenox Wellcare Medical, P.C. for the benefit of the Count III Defendants.

277.   Allstate (and all plaintiffs individually) is in the business of writing insurance and paying claims in the State of New York.  Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

278.   Lenox Wellcare Medical, P.C. constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

279.   The Count III Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

280.   Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count III Defendants' conduct.

281.   The Count III Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

282.   By virtue of the Count III Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT IV
## CONSPIRACY UNDER 18 U.S.C. §1962(d)
**(Against Alla Smirnov, Marina Bluvstein, David Lee Hsu, M.D., Seritta Klass, Steven Parchment, Rodney Terry, and Rusty Moore)**

283.    Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth above as if fully set forth herein.

284.    Defendants Smirnov, Bluvstein, Hsu, Klass, Parchment, Terry, and Moore conspired with each other to violate 18 U.S.C. § 1962(c) through the operation of Lenox Wellcare Medical, P.C. ("Lenox").

285.    Defendants Smirnov, Bluvstein, Hsu, Klass, Parchment, Terry, and Moore each agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(c) by agreeing to conduct the affairs of Lenox by means of a pattern of racketeering activity, including numerous acts of mail fraud as set forth in Exhibit 1, and through the preparation and/or submission of fraudulent insurance claim documents, including NF-3 forms, to Allstate.

286.    The purpose of the conspiracy was to obtain No-Fault payments from Allstate on behalf of Lenox even though Lenox, as a result of defendants' unlawful conduct, was not eligible to collect such No-Fault payments.

287.    Smirnov, Bluvstein, Hsu, Klass, Parchment, Terry, and Moore were aware of this purpose, and agreed to take steps to meet the conspiracy's objectives, including the creation of insurance claim documents containing material misrepresentations and/or material omissions.

288.    Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the defendants' unlawful conduct described herein.

289.    By virtue of this violation of 18 U.S.C. § 1962(d), defendants, Smirnov, Bluvstein, Hsu, Klass, Parchment, Terry, and Moore, are jointly and severally liable to Allstate,

and Allstate is entitled to recover from each of the defendants identified, three times the damages sustained by reason of the claims submitted by the defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT V
### VIOLATIONS OF 18 U.S.C. §1962(c)
### RACKATEER INFLUENCED AND CORRUPT ORGANIZATION ACT
**(Against Alla Smirnov, Marina Bluvstein, Danette Stefanelli, D.C., Seritta Klass, Steven Parchment, Rodney Terry, and Rusty Moore)**

290.    Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth above as if fully set forth herein.

291.    In connection with each of the claims identified in plaintiffs' Complaint, Alla Smirnov, Marina Bluvstein, Danette Stefanelli, D.C., Seritta Klass, Steven Parchment, Rodney Terry, and Rusty Moore (collectively "Count V Defendants") intentionally caused to be prepared and mailed false medical documentation in connection with Allstate insurance claims, in furtherance of their scheme to defraud.

292.    The Count V Defendants employed one or more mailings to demand and/or receive payment on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 1.

293.    Among other things, NF-3 forms, medical billing invoices, medical reports, applications for insurance, and premium checks were routinely delivered to Allstate through the U.S. Mail.

294.    Policies of insurance were delivered to insureds through the U.S. Mail.

295.    Medical reports and invoices were delivered to Allstate through the U.S. Mail. Payments to defendants traveled via the U.S. Mail.

296.    As documented above, the Count V Defendants repeatedly and intentionally submitted NF-3 forms and other medical documentation to Allstate for medical expenses and/or services that were purportedly performed at CB Chiropractic, LLC, to collect payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

297.    As a result of, and in reasonable reliance upon these misleading documents and misrepresentations, Allstate, by its agents and employees, issued drafts CB Chiropractic, LLC, for the benefit of the Count V Defendants, that would not otherwise have been paid.

298.    The Count V Defendants' pattern of fraudulent claims, each appearing legitimate on their face, also prevented Allstate from discovering the fraudulent scheme for a long period of time, thus enabling them to continue without being detected.

299.    The acts set forth above constitute indictable offenses pursuant to 18 U.S.C. §1341 (mail fraud).

300.    By filing numerous fraudulent claims in an ongoing scheme, the Count V Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. §1962(c).

301.    The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to CB Chiropractic, LLC for the benefit of the Count V Defendants.

302.    Allstate (and all plaintiffs individually) is in the business of writing insurance and paying claims in the State of New York.  Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

303. CB Chiropractic, LLC constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

304. The Count V Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

305. Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count III Defendants' conduct.

306. The Count V Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

307. By virtue of the Count V Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT VI
### CONSPIRACY UNDER 18 U.S.C. §1962(d)
**(Against Alla Smirnov, Marina Bluvstein, Danette Stefanelli, D.C., Seritta Klass, Steven Parchment, Rodney Terry, and Rusty Moore)**

308. Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth above as if fully set forth herein.

309. Defendants Smirnov, Bluvstein, Stefanelli, Klass, Parchment, Terry, and Moore conspired with each other to violate 18 U.S.C. § 1962(c) through the operation of CB Chiropractic, LLC ("CB").

310. Defendants Smirnov, Bluvstein, Stefanelli, Klass, Parchment, Terry, and Moore each agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(c) by agreeing to conduct the affairs of CB by means of a pattern of racketeering activity, including numerous acts of mail

fraud as set forth in Exhibit 1, and through the preparation and/or submission of fraudulent insurance claim documents, including NF-3 forms, to Allstate.

311.   The purpose of the conspiracy was to obtain No-Fault payments from Allstate on behalf of CB even though CB, as a result of defendants' unlawful conduct, was not eligible to collect such No-Fault payments.

312.   Smirnov, Bluvstein, Stefanelli, Klass, Parchment, Terry, and Moore were aware of this purpose, and agreed to take steps to meet the conspiracy's objectives, including the creation of insurance claim documents containing material misrepresentations and/or material omissions.

313.   Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the defendants' unlawful conduct described herein.

314.   By virtue of this violation of 18 U.S.C. § 1962(d), defendants, Smirnov, Bluvstein, Stefanelli, Klass, Parchment, Terry, and Moore, are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the defendants identified, three times the damages sustained by reason of the claims submitted by the defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT VII
### VIOLATIONS OF 18 U.S.C. §1962(c)
### RACKATEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT
**(Against Leonid Kaplan, David Lee Hsu, M.D., Vadim Miloradovich, M.D., Ilya Slepak, Boris Gasilo, Abraham Pinkhasov, Tatyana Usyk, Jasoda Ramoutar, and Larry Cantrell)**

315.   Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth above as if fully set forth herein.

316.    In connection with each of the claims identified in plaintiffs' Complaint, Leonid Kaplan, David Lee Hsu, M.D., Vadim Miloradovich, M.D., Ilya Slepak, Boris Gasilo, Abraham Pinkhasov, Tatyana Usyk, Jasoda Ramoutar and Larry Cantrell (collectively "Count VII Defendants") intentionally caused to be prepared and mailed false medical documentation in connection with Allstate insurance claims, in furtherance of their scheme to defraud.

317.    The Count VII Defendants employed one or more mailings to demand and/or receive payment on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 1.

318.    Among other things, NF-3 forms, medical billing invoices, medical reports, applications for insurance, and premium checks were routinely delivered to Allstate through the U.S. Mail.

319.    Policies of insurance were delivered to insureds through the U.S. Mail.

320.    Medical reports and invoices were delivered to Allstate through the U.S. Mail. Payments to defendants traveled via the U.S. Mail.

321.    As documented above, the Count VIII Defendants repeatedly and intentionally submitted NF-3 forms and other medical documentation to Allstate for medical expenses and/or services that were purportedly performed at New Age Orthopedic Rehabilitation, P.C. to collect payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

322.    As a result of, and in reasonable reliance upon these misleading documents and misrepresentations, Allstate, by its agents and employees, issued drafts to New Age Orthopedic Rehabilitation, P.C., for the benefit of the Count VII Defendants, that would not otherwise have been paid.

323.   The Count VII Defendants' pattern of fraudulent claims, each appearing legitimate on their face, also prevented Allstate from discovering the fraudulent scheme for a long period of time, thus enabling them to continue without being detected.

324.   The acts set forth above constitute indictable offenses pursuant to 18 U.S.C. §1341 (mail fraud).

325.   By filing numerous fraudulent claims in an ongoing scheme, the Count VII Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. §1962(c).

326.   The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to New Age Orthopedic Rehabilitation, P.C. for the benefit of the Count VII Defendants.

327.   Allstate (and all plaintiffs individually) is in the business of writing insurance and paying claims in the State of New York.  Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

328.   New Age Orthopedic Rehabilitation, P.C. constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

329.   The Count VII Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

330.   Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count VII Defendants' conduct.

331.   The Count VII Defendants' conduct in violation of 18 U.S.C. §1962(c) was the direct and proximate cause of Allstate's injury.

332.   By virtue of the Count VII Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**COUNT VIII**
**CONSPIRACY UNDER 18 U.S.C. §1962(d)**
**(Against Leonid Kaplan, David Lee Hsu, M.D., Vadim Miloradovich, M.D., Ilya Slepak, Boris Gasilo, Abraham Pinkhasov, Tatyana Usyk, Jasoda Ramoutar, and Larry Cantrell)**

333.   Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth above as if fully set forth herein.

334.   Defendants Kaplan, Hsu, Miloradovich, Slepak, Gasilo, Pinkhasov, Usyk, Ramoutar, and Cantrell conspired with each other to violate 18 U.S.C. § 1962(c) through the operation of New Age Orthopedic Rehabilitation, P.C. ("New Age").

335.   Defendants Kaplan, Hsu, Miloradovich, Slepak, Gasilo, Pinkhasov, Usyk, Ramoutar, and Cantrell each agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(c) by agreeing to conduct the affairs of New Age by means of a pattern of racketeering activity, including numerous acts of mail fraud as set forth in Exhibit 1, and through the preparation and/or submission of fraudulent insurance claim documents, including NF-3 forms, to Allstate.

336.   The purpose of the conspiracy was to obtain No-Fault payments from Allstate on behalf of New Age even though New Age, as a result of defendants' unlawful conduct, was not eligible to collect such No-Fault payments.

337.   Kaplan, Hsu, Miloradovich, Slepak, Gasilo, Pinkhasov, Usyk, Ramoutar, and Cantrell were aware of this purpose, and agreed to take steps to meet the conspiracy's objectives,

including the creation of insurance claim documents containing material misrepresentations and/or material omissions.

338.   Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the defendants' unlawful conduct described herein.

339.   By virtue of this violation of 18 U.S.C. § 1962(d), defendants, Kaplan, Hsu, Miloradovich, Slepak, Gasilo, Pinkhasov, Usyk, Ramoutar, and Cantrell, are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the defendants identified, three times the damages sustained by reason of the claims submitted by the defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT IX
### VIOLATIONS OF 18 U.S.C. §1962(c)
### RACKATEER INFLUENCED AND CORRUPT ORGANIZATION ACT
### (Against Leonid Kaplan, David Lee Hsu, M.D., Vadim Miloradovich, M.D., Ilya Slepak, Boris Gasilo, Abraham Pinkhasov, Tatyana Usyk, Jasoda Ramoutar, and Larry Cantrell)

340.   Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth above as if fully set forth herein.

341.   In connection with each of the claims identified in plaintiffs' Complaint, Leonid Kaplan, David Lee Hsu, M.D., Vadim Miloradovich, M.D., Ilya Slepak, Boris Gasilo, Abraham Pinkhasov, Tatyana Usyk, Jasoda Ramoutar and Larry Cantrell (collectively "Count IX Defendants") intentionally caused to be prepared and mailed false medical documentation in connection with Allstate insurance claims, in furtherance of their scheme to defraud.

342.    The Count IX Defendants employed one or more mailings to demand and/or receive payment on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 1.

343.    Among other things, NF-3 forms, medical billing invoices, medical reports, applications for insurance, and premium checks were routinely delivered to Allstate through the U.S. Mail.

344.    Policies of insurance were delivered to insureds through the U.S. Mail.

345.    Medical reports and invoices were delivered to Allstate through the U.S. Mail. Payments to defendants traveled via the U.S. Mail.

346.    As documented above, the Count IX Defendants repeatedly and intentionally submitted NF-3 forms and other medical documentation to Allstate for medical expenses and/or services that were purportedly performed at First Aid Medical Care, P.C. to collect payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

347.    As a result of, and in reasonable reliance upon these misleading documents and misrepresentations, Allstate, by its agents and employees, issued drafts to First Aid Medical Care, P.C., for the benefit of the Count IX Defendants, that would not otherwise have been paid.

348.    The Count IX Defendants' pattern of fraudulent claims, each appearing legitimate on their face, also prevented Allstate from discovering the fraudulent scheme for a long period of time, thus enabling them to continue without being detected.

349.    The acts set forth above constitute indictable offenses pursuant to 18 U.S.C. §1341 (mail fraud).

350.   By filing numerous fraudulent claims in an ongoing scheme, the Count IX Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. §1962(c).

351.   The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to First Aid Medical Care, P.C. for the benefit of the Count IX Defendants.

352.   Allstate (and all plaintiffs individually) is in the business of writing insurance and paying claims in the State of New York.  Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

353.   First Aid Medical Care, P.C. constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

354.   The Count IX Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

355.   Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count IX Defendants' conduct.

356.   The Count IX Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

357.   By virtue of the Count IX Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT X
## CONSPIRACY UNDER 18 U.S.C. §1962(d)
**(Against Leonid Kaplan, David Lee Hsu, M.D., Vadim Miloradovich, M.D., Ilya Slepak, Boris Gasilo, Abraham Pinkhasov, Tatyana Usyk, Jasoda Ramoutar, and Larry Cantrell)**

358.    Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth above as if fully set forth herein.

359.    Defendants Kaplan, Hsu, Miloradovich, Slepak, Gasilo, Pinkhasov, Usyk, Ramoutar, and Cantrell conspired with each other to violate 18 U.S.C. § 1962(c) through the operation of First Aid Medical Care, P.C. ("First Aid").

360.    Defendants Kaplan, Hsu, Miloradovich, Slepak, Gasilo, Pinkhasov, Usyk, Ramoutar, and Cantrell each agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(c) by agreeing to conduct the affairs of First Aid by means of a pattern of racketeering activity, including numerous acts of mail fraud as set forth in Exhibit 1, and through the preparation and/or submission of fraudulent insurance claim documents, including NF-3 forms, to Allstate.

361.    The purpose of the conspiracy was to obtain No-Fault payments from Allstate on behalf of First Aid even though First Aid, as a result of defendants' unlawful conduct, was not eligible to collect such No-Fault payments.

362.    Kaplan, Hsu, Miloradovich, Slepak, Gasilo, Pinkhasov, Usyk, Ramoutar, and Cantrell were aware of this purpose, and agreed to take steps to meet the conspiracy's objectives, including the creation of insurance claim documents containing material misrepresentations and/or material omissions.

363.    Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the defendants' unlawful conduct described herein.

364.     By virtue of this violation of 18 U.S.C. § 1962(d), defendants, Kaplan, Hsu, Miloradovich, Slepak, Gasilo, Pinkhasov, Usyk, Ramoutar, and Cantrell, are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the defendants identified, three times the damages sustained by reason of the claims submitted by the defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT XI
### VIOLATIONS OF 18 U.S.C. §1962(c)
### RACKATEER INFLUENCED AND CORRUPT ORGANIZATION ACT
**(Against Leonid Kaplan, David Lee Hsu, M.D., Vadim Miloradovich, M.D., Ilya Slepak, Boris Gasilo, Abraham Pinkhasov, Tatyana Usyk, Jasoda Ramoutar, and Larry Cantrell)**

365.     Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth above as if fully set forth herein.

366.     In connection with each of the claims identified in plaintiffs' Complaint, Leonid Kaplan, David Lee Hsu, M.D., Vadim Miloradovich, M.D., Ilya Slepak, Boris Gasilo, Abraham Pinkhasov, Tatyana Usyk, Jasoda Ramoutar and Larry Cantrell (collectively "Count XI Defendants") intentionally caused to be prepared and mailed false medical documentation in connection with Allstate insurance claims, in furtherance of their scheme to defraud.

367.     The Count XI Defendants employed one or more mailings to demand and/or receive payment on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 1.

368.     Among other things, NF-3 forms, medical billing invoices, medical reports, applications for insurance, and premium checks were routinely delivered to Allstate through the U.S. Mail.

369.     Policies of insurance were delivered to insureds through the U.S. Mail.

370.    Medical reports and invoices were delivered to Allstate through the U.S. Mail. Payments to defendants traveled via the U.S. Mail.

371.    As documented above, the Count XI Defendants repeatedly and intentionally submitted NF-3 forms and other medical documentation to Allstate for medical expenses and/or services that were purportedly performed at Rosedale Medical, P.C. to collect payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

372.    As a result of, and in reasonable reliance upon these misleading documents and misrepresentations, Allstate, by its agents and employees, issued drafts to Rosedale Medical, P.C., for the benefit of the Count XI Defendants, that would not otherwise have been paid.

373.    The Count XI Defendants' pattern of fraudulent claims, each appearing legitimate on their face, also prevented Allstate from discovering the fraudulent scheme for a long period of time, thus enabling them to continue without being detected.

374.    The acts set forth above constitute indictable offenses pursuant to 18 U.S.C. §1341 (mail fraud).

375.    By filing numerous fraudulent claims in an ongoing scheme, the Count XI Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. §1962(c).

376.    The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to Rosedale Medical, P.C. for the benefit of the Count XI Defendants.

377.    Allstate (and all plaintiffs individually) is in the business of writing insurance and paying claims in the State of New York.  Insurance fraud schemes practiced here and elsewhere

have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

378.   Rosedale Medical, P.C. constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

379.   The Count XI Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

380.   Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count XI Defendants' conduct.

381.   The Count XI Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

382.   By virtue of the Count XI Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

### COUNT XII
### CONSPIRACY UNDER 18 U.S.C. §1962(d)
**(Against Leonid Kaplan, David Lee Hsu, M.D., Vadim Miloradovich, M.D., Ilya Slepak, Boris Gasilo, Abraham Pinkhasov, Tatyana Usyk, Jasoda Ramoutar, and Larry Cantrell)**

383.   Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth above as if fully set forth herein.

384.   Defendants Kaplan, Hsu, Miloradovich, Slepak, Gasilo, Pinkhasov, Usyk, Ramoutar, and Cantrell conspired with each other to violate 18 U.S.C. § 1962(c) through the operation of Rosedale Medical, P.C. ("Rosedale").

385.    Defendants Kaplan, Hsu, Miloradovich, Slepak, Gasilo, Pinkhasov, Usyk, Ramoutar, and Cantrell each agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(c) by agreeing to conduct the affairs of Rosedale by means of a pattern of racketeering activity, including numerous acts of mail fraud as set forth in Exhibit 1, and through the preparation and/or submission of fraudulent insurance claim documents, including NF-3 forms, to Allstate.

386.    The purpose of the conspiracy was to obtain No-Fault payments from Allstate on behalf of Rosedale even though Rosedale, as a result of defendants' unlawful conduct, was not eligible to collect such No-Fault payments.

387.    Kaplan, Hsu, Miloradovich, Slepak, Gasilo, Pinkhasov, Usyk, Ramoutar, and Cantrell were aware of this purpose, and agreed to take steps to meet the conspiracy's objectives, including the creation of insurance claim documents containing material misrepresentations and/or material omissions.

388.    Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the defendants' unlawful conduct described herein.

389.    By virtue of this violation of 18 U.S.C. § 1962(d), defendants, Kaplan, Hsu, Miloradovich, Slepak, Gasilo, Pinkhasov, Usyk, Ramoutar, and Cantrell, are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the defendants identified, three times the damages sustained by reason of the claims submitted by the defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT XIII
### VIOLATIONS OF 18 U.S.C. §1962(c)
### RACKATEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT
**(Against Leonid Kaplan, Leslie Dantes Theodore, M.D., Vadim Miloradovich, M.D., Ilya Slepak, Boris Gasilo, Abraham Pinkhasov, Tatyana Usyk, Jasoda Ramoutar, and Larry Cantrell)**

390.    Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth above as if fully set forth herein.

391.    In connection with each of the claims identified in plaintiffs' Complaint, Leonid Kaplan, Leslie Dantes Theodore, M.D., Vadim Miloradovich, M.D., Ilya Slepak, Boris Gasilo, Abraham Pinkhasov, Tatyana Usyk, Jasoda Ramoutar and Larry Cantrell (collectively "Count XIII Defendants") intentionally caused to be prepared and mailed false medical documentation in connection with Allstate insurance claims, in furtherance of their scheme to defraud.

392.    The Count XIII Defendants employed one or more mailings to demand and/or receive payment on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 1.

393.    Among other things, NF-3 forms, medical billing invoices, medical reports, applications for insurance, and premium checks were routinely delivered to Allstate through the U.S. Mail.

394.    Policies of insurance were delivered to insureds through the U.S. Mail.

395.    Medical reports and invoices were delivered to Allstate through the U.S. Mail. Payments to defendants traveled via the U.S. Mail.

396.    As documented above, the Count XIII Defendants repeatedly and intentionally submitted NF-3 forms and other medical documentation to Allstate for medical expenses and/or services that were purportedly performed at TDL Medical, P.C. to collect payment from Allstate

under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

397.    As a result of, and in reasonable reliance upon these misleading documents and misrepresentations, Allstate, by its agents and employees, issued drafts to TDL Medical, P.C., for the benefit of the Count XIII Defendants, that would not otherwise have been paid.

398.    The Count XIII Defendants' pattern of fraudulent claims, each appearing legitimate on their face, also prevented Allstate from discovering the fraudulent scheme for a long period of time, thus enabling them to continue without being detected.

399.    The acts set forth above constitute indictable offenses pursuant to 18 U.S.C. §1341 (mail fraud).

400.    By filing numerous fraudulent claims in an ongoing scheme, the Count XIII Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. §1962(c).

401.    The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to TDL Medical, P.C. for the benefit of the Count XIII Defendants.

402.    Allstate (and all plaintiffs individually) is in the business of writing insurance and paying claims in the State of New York.  Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

403.    TDL Medical, P.C. constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

404.    The Count XIII Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

405.    Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count XIII Defendants' conduct.

406.    The Count XIII Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

407.    By virtue of the Count XIII Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

### COUNT XIV
### CONSPIRACY UNDER 18 U.S.C. §1962(d)
**(Against Leonid Kaplan, Leslie Dantes Theodore, M.D., Vadim Miloradovich, M.D., Ilya Slepak, Boris Gasilo, Abraham Pinkhasov, Tatyana Usyk, Jasoda Ramoutar, and Larry Cantrell)**

408.    Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth above as if fully set forth herein.

409.    Defendants Kaplan, Theodore, Miloradovich, Slepak, Gasilo, Pinkhasov, Usyk, Ramoutar, and Cantrell conspired with each other to violate 18 U.S.C. § 1962(c) through the operation of TDL Medical, P.C. ("TDL").

410.    Defendants Kaplan, Theodore, Miloradovich, Slepak, Gasilo, Pinkhasov, Usyk, Ramoutar, and Cantrell each agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(c) by agreeing to conduct the affairs of TDL by means of a pattern of racketeering activity, including numerous acts of mail fraud as set forth in Exhibit 1, and through the preparation and/or submission of fraudulent insurance claim documents, including NF-3 forms, to Allstate.

411.    The purpose of the conspiracy was to obtain No-Fault payments from Allstate on behalf of TDL even though TDL, as a result of defendants' unlawful conduct, was not eligible to collect such No-Fault payments.

412.    Kaplan, Theodore, Miloradovich, Slepak, Gasilo, Pinkhasov, Usyk, Ramoutar, and Cantrell were aware of this purpose, and agreed to take steps to meet the conspiracy's objectives, including the creation of insurance claim documents containing material misrepresentations and/or material omissions.

413.    Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the defendants' unlawful conduct described herein.

414.    By virtue of this violation of 18 U.S.C. § 1962(d), defendants, Kaplan, Theodore, Miloradovich, Slepak, Gasilo, Pinkhasov, Usyk, Ramoutar, and Cantrell, are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the defendants identified, three times the damages sustained by reason of the claims submitted by the defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT XV
### VIOLATIONS OF 18 U.S.C. §1962(c)
### RACKATEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT
### (Against Leonid Kaplan, Leslie Dantes Theodore, M.D., Vadim Miloradovich, M.D., Ilya Slepak, Boris Gasilo, Abraham Pinkhasov, Tatyana Usyk, Jasoda Ramoutar, and Larry Cantrell)

415.    Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth above as if fully set forth herein.

416.    In connection with each of the claims identified in plaintiffs' Complaint, Leonid Kaplan, Leslie Dantes Theodore, M.D., Vadim Miloradovich, M.D., Ilya Slepak, Boris Gasilo,

Abraham Pinkhasov, Tatyana Usyk, Jasoda Ramoutar and Larry Cantrell (collectively "Count XV Defendants") intentionally caused to be prepared and mailed false medical documentation in connection with Allstate insurance claims, in furtherance of their scheme to defraud.

417.   The Count XV Defendants employed one or more mailings to demand and/or receive payment on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 1.

418.   Among other things, NF-3 forms, medical billing invoices, medical reports, applications for insurance, and premium checks were routinely delivered to Allstate through the U.S. Mail.

419.   Policies of insurance were delivered to insureds through the U.S. Mail.

420.   Medical reports and invoices were delivered to Allstate through the U.S. Mail. Payments to defendants traveled via the U.S. Mail.

421.   As documented above, the Count XV Defendants repeatedly and intentionally submitted NF-3 forms and other medical documentation to Allstate for medical expenses and/or services that were purportedly performed at LDT Medical, P.C. to collect payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

422.   As a result of, and in reasonable reliance upon these misleading documents and misrepresentations, Allstate, by its agents and employees, issued drafts to LDT Medical, P.C., for the benefit of the Count XV Defendants, that would not otherwise have been paid.

423.   The Count XV Defendants' pattern of fraudulent claims, each appearing legitimate on their face, also prevented Allstate from discovering the fraudulent scheme for a long period of time, thus enabling them to continue without being detected.

424.    The acts set forth above constitute indictable offenses pursuant to 18 U.S.C. §1341 (mail fraud).

425.    By filing numerous fraudulent claims in an ongoing scheme, the Count XV Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. §1962(c).

426.    The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to LDT Medical, P.C. for the benefit of the Count XV Defendants.

427.    Allstate (and all plaintiffs individually) is in the business of writing insurance and paying claims in the State of New York.  Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

428.    LDT Medical, P.C. constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

429.    The Count XV Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

430.    Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count XV Defendants' conduct.

431.    The Count XV Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

432.    By virtue of the Count XV Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the

claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**COUNT XVI**
**CONSPIRACY UNDER 18 U.S.C. §1962(d)**
**(Against Leonid Kaplan, Leslie Dantes Theodore, M.D., Vadim Miloradovich, M.D., Ilya Slepak, Boris Gasilo, Abraham Pinkhasov, Tatyana Usyk, Jasoda Ramoutar, and Larry Cantrell)**

433.    Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth above as if fully set forth herein.

434.    Defendants Kaplan, Theodore, Miloradovich, Slepak, Gasilo, Pinkhasov, Usyk, Ramoutar, and Cantrell conspired with each other to violate 18 U.S.C. § 1962(c) through the operation of LDT Medical, P.C. ("LDT").

435.    Defendants Kaplan, Theodore, Miloradovich, Slepak, Gasilo, Pinkhasov, Usyk, Ramoutar, and Cantrell each agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(c) by agreeing to conduct the affairs of LDT by means of a pattern of racketeering activity, including numerous acts of mail fraud as set forth in Exhibit 1, and through the preparation and/or submission of fraudulent insurance claim documents, including NF-3 forms, to Allstate.

436.    The purpose of the conspiracy was to obtain No-Fault payments from Allstate on behalf of LDT even though LDT, as a result of defendants' unlawful conduct, was not eligible to collect such No-Fault payments.

437.    Kaplan, Theodore, Miloradovich, Slepak, Gasilo, Pinkhasov, Usyk, Ramoutar, and Cantrell were aware of this purpose, and agreed to take steps to meet the conspiracy's objectives, including the creation of insurance claim documents containing material misrepresentations and/or material omissions.

438.    Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the defendants' unlawful conduct described herein.

439.    By virtue of this violation of 18 U.S.C. § 1962(d), defendants, Kaplan, Theodore, Miloradovich, Slepak, Gasilo, Pinkhasov, Usyk, Ramoutar, and Cantrell, are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the defendants identified, three times the damages sustained by reason of the claims submitted by the defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**COUNT XVII**
**VIOLATIONS OF 18 U.S.C. §1962(c)**
**RACKATEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT**
**(Against Leonid Kaplan, Khalika Ayesha Rowe, D.C., Ilya Slepak, Boris Gasilo, Abraham Pinkhasov, Tatyana Usyk, Jasoda Ramoutar, and Larry Cantrell)**

440.    Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth above as if fully set forth herein.

441.    In connection with each of the claims identified in plaintiffs' Complaint, Leonid Kaplan, Khalika Ayesha Rowe, D.C., Ilya Slepak, Boris Gasilo, Abraham Pinkhasov, Tatyana Usyk, Jasoda Ramoutar and Larry Cantrell (collectively "Count XVII Defendants") intentionally caused to be prepared and mailed false medical documentation in connection with Allstate insurance claims, in furtherance of their scheme to defraud.

442.    The Count XVII Defendants employed one or more mailings to demand and/or receive payment on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 1.

443. Among other things, NF-3 forms, medical billing invoices, medical reports, applications for insurance, and premium checks were routinely delivered to Allstate through the U.S. Mail.

444. Policies of insurance were delivered to insureds through the U.S. Mail.

445. Medical reports and invoices were delivered to Allstate through the U.S. Mail. Payments to defendants traveled via the U.S. Mail.

446. As documented above, the Count XVII Defendants repeatedly and intentionally submitted NF-3 forms and other medical documentation to Allstate for medical expenses and/or services that were purportedly performed at West End Chiropractic, P.C. to collect payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

447. As a result of, and in reasonable reliance upon these misleading documents and misrepresentations, Allstate, by its agents and employees, issued drafts to West End Chiropractic, P.C., for the benefit of the Count XVII Defendants, that would not otherwise have been paid.

448. The Count XVII Defendants' pattern of fraudulent claims, each appearing legitimate on their face, also prevented Allstate from discovering the fraudulent scheme for a long period of time, thus enabling them to continue without being detected.

449. The acts set forth above constitute indictable offenses pursuant to 18 U.S.C. §1341 (mail fraud).

450. By filing numerous fraudulent claims in an ongoing scheme, the Count XVII Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. §1962(c).

451.    The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to West End Chiropractic, P.C. for the benefit of the Count XVII Defendants.

452.    Allstate (and all plaintiffs individually) is in the business of writing insurance and paying claims in the State of New York.  Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

453.    West End Chiropractic, P.C. constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

454.    The Count XVII Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

455.    Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count XVII Defendants' conduct.

456.    The Count XVII Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

457.    By virtue of the Count XVII Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT XVIII
## CONSPIRACY UNDER 18 U.S.C. §1962(d)
### (Against Leonid Kaplan, Khalika Ayesha Rowe, D.C., Ilya Slepak, Boris Gasilo, Abraham Pinkhasov, Tatyana Usyk, Jasoda Ramoutar, and Larry Cantrell)

458.    Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth above as if fully set forth herein.

459.    Defendants Kaplan, Rowe, Slepak, Gasilo, Pinkhasov, Usyk, Ramoutar, and Cantrell conspired with each other to violate 18 U.S.C. § 1962(c) through the operation of West End Chiropractic, P.C. ("West End").

460.    Defendants Kaplan, Rowe, Slepak, Gasilo, Pinkhasov, Usyk, Ramoutar, and Cantrell each agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(c) by agreeing to conduct the affairs of West End by means of a pattern of racketeering activity, including numerous acts of mail fraud as set forth in Exhibit 1, and through the preparation and/or submission of fraudulent insurance claim documents, including NF-3 forms, to Allstate.

461.    The purpose of the conspiracy was to obtain No-Fault payments from Allstate on behalf of West End even though West End, as a result of defendants' unlawful conduct, was not eligible to collect such No-Fault payments.

462.    Kaplan, Rowe, Slepak, Gasilo, Pinkhasov, Usyk, Ramoutar, and Cantrell were aware of this purpose, and agreed to take steps to meet the conspiracy's objectives, including the creation of insurance claim documents containing material misrepresentations and/or material omissions.

463.    Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the defendants' unlawful conduct described herein.

464.    By virtue of this violation of 18 U.S.C. § 1962(d), defendants Kaplan, Rowe, Slepak, Gasilo, Pinkhasov, Usyk, Ramoutar, and Cantrell, are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the defendants identified, three times the damages sustained by reason of the claims submitted by the defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

### COUNT XIX
### FRAUD
### (Against All Defendants)

465.    Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth above as if fully set forth herein.

466.    The defendants' scheme to defraud Allstate was dependant upon a succession of material misrepresentations of fact that the defendants were entitled to collect No-Fault benefits under New York law.

467.    The misrepresentations of fact by the defendants included, but were not limited to, the material misrepresentations of fact made in defendants' NF-3 forms, medical reports, invoices and collection documentation.

468.    The defendants' representations were false, or required disclosure of additional facts to render the information furnished not misleading.

469.    The misrepresentations were intentionally made by the defendants in furtherance of their scheme to defraud Allstate by submitting claims from fraudulently incorporated medical clinics for No-Fault insurance benefits and bodily injury claims.

470.    The defendants' misrepresentations were known to be false and were made for the purposes of inducing Allstate to make payments for claims that were not legitimate.

471.     Allstate reasonably relied upon such material misrepresentations to its detriment in paying numerous, unreasonable, unnecessary, inappropriate, non-meritorious bills for medical expenses pursuant to no-fault insurance claims, bodily injury claims, and uninsured/underinsured motorist claims.

472.     Allstate's damages include, but are not limited to:

    a.   Monies paid for medical expenses and services that were rendered at clinics illegally practicing medicine;

    b.   Reimbursement for the fair and reasonable value of the labor and resources expended to detect and expose the defendants' scheme to defraud Allstate.

## COUNT XX
### (Unjust Enrichment)
### (Against All Defendants)

473.     Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth above as if fully set forth herein.

474.     When Allstate paid St. John Medical Care, P.C., Lenox Wellcare Medical, P.C., CB Chiropractic, LLC, New Age Orthopedic Rehabilitation, P.C., First Aid Medical Care, P.C., Rosedale Medical, P.C., TDL Medical, P.C., LDT Medical, P.C., and West End Chiropractic, P.C. ("PC Defendants"), it reasonably believed that it was legally obligated to make such payments based upon the defendants' fraudulent misrepresentations and omissions.

475.     Allstate's payments constitute a benefit which the defendants aggressively sought and voluntarily accepted.

476.     The defendants caused the PC Defendants to wrongfully obtain payments from the plaintiff through their fraudulent billing scheme as described more fully in the paragraphs above.

477.   Retention of those benefits would violate fundamental principles of justice, equity and good conscience.

## COUNT XXI
### (Declaratory Relief Under 28 U.S.C. § 2201)
**(Against St. John Medical Care, P.C., Lenox Wellcare Medical, P.C., CB Chiropractic, LLC, New Age Orthopedic Rehabilitation, P.C., First Aid Medical Care, P.C., Rosedale Medical, P.C., TDL Medical, P.C., LDT Medical, P.C., and West End Chiropractic, P.C.)**

478.   Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth above as if fully set forth herein.

479.   To be eligible to receive assigned No-Fault benefits, an assignee provider must adhere to all applicable New York statutes which grant the authority to provide health services in New York.

480.   In view of their illegal corporate structure, and/or illegal control by a non-physician, PC Defendants have been operating in violation of New York's Insurance (and other regulatory and statutory provisions), and thus have no had standing to submit or receive assigned No-Fault benefits.

481.   The PC Defendants (i.e., St. John Medical Care, P.C., Lenox Wellcare Medical, P.C., CB Chiropractic, LLC, New Age Orthopedic Rehabilitation, P.C., First Aid Medical Care, P.C., Rosedale Medical, P.C., TDL Medical, P.C., LDT Medical, P.C., and West End Chiropractic, P.C.) continue to submit assigned No-Fault claims to the plaintiffs, and other claims remain pending with plaintiffs.

482.   The PC Defendants continue to challenge prior claim denials.

483.   The PC Defendants continue to commence litigation against Allstate in connection seeking payment of No-Fault benefits allegedly due and owing.

484.   A justifiable controversy exists between plaintiffs and the PC Defendants since the PC Defendants challenge Allstate's ability to deny such claims.

485.   Plaintiffs have no adequate remedy at law.

486.   The PC Defendants will continue to bill for No-Fault services absent a declaration by this Court that their activities are unlawful and that plaintiffs have no obligation to pay the pending, previously-denied and any future no-fault claims submitted by any of the PC Defendants.

487.   Accordingly, Allstate requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that the PC Defendants were fraudulently incorporated and/or controlled by non-licensed laypersons in violation of New York's Insurance Laws and New York General Business Law §349 (and other statutory provisions), and thus have no standing to submit or receive assigned No-Fault benefits.

## XII.   **DEMAND FOR RELIEF**

WHEREFORE, plaintiffs, Allstate Insurance Company, Allstate Indemnity Company, Allstate New Jersey Insurance Company, Allstate Property & Casualty Insurance Company, and Allstate Fire & Casualty Insurance Company (collectively "Allstate"), respectfully pray that judgment enter in their favor, as follows:

**COUNT I**
**(Violations of 18 U.S.C. §1962(c))**

(a)   AWARD Allstate's actual and consequential damages to be established at trial;

(b)   AWARD Allstate treble damages pursuant to 18 U.S.C. §1964, interests, costs and attorneys' fees; and

(c)   GRANT injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT II
### (Violations of 18 U.S.C. §1962(d))

(a)     AWARD Allstate's actual and consequential damages to be established at trial;

(b)     AWARD Allstate treble damages pursuant to 18 U.S.C. §1964, interests, costs and attorneys' fees; and

(c)     GRANT injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT III
### (Violations of 18 U.S.C. §1962(c))

(a)     AWARD Allstate's actual and consequential damages to be established at trial;

(b)     AWARD Allstate treble damages pursuant to 18 U.S.C. §1964, interests, costs and attorneys' fees; and

(c)     GRANT injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT IV
### (Violations of 18 U.S.C. §1962(d))

(a) AWARD Allstate's actual and consequential damages to be established at trial;

(b) AWARD Allstate treble damages pursuant to 18 U.S.C. §1964, interests, costs and attorneys' fees; and

(c) GRANT injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d) GRANT all other relief this Court deems just.

## COUNT V
### (Violations of 18 U.S.C. §1962(c))

(a) AWARD Allstate's actual and consequential damages to be established at trial;

(b) AWARD Allstate treble damages pursuant to 18 U.S.C. §1964, interests, costs and attorneys' fees; and

(c) GRANT injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d) GRANT all other relief this Court deems just.

## COUNT VI
### (Violations of 18 U.S.C. §1962(d))

(a) AWARD Allstate's actual and consequential damages to be established at trial;

(b) AWARD Allstate treble damages pursuant to 18 U.S.C. §1964, interests, costs and attorneys' fees; and

(c) GRANT injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d) GRANT all other relief this Court deems just.

## COUNT VII
### (Violations of 18 U.S.C. §1962(c))

(a) AWARD Allstate's actual and consequential damages to be established at trial;

(b) AWARD Allstate treble damages pursuant to 18 U.S.C. §1964, interests, costs and attorneys' fees; and

(c) GRANT injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d) GRANT all other relief this Court deems just.

## COUNT VIII
### (Violations of 18 U.S.C. §1962(d))

(a) AWARD Allstate's actual and consequential damages to be established at trial;

(b) AWARD Allstate treble damages pursuant to 18 U.S.C. §1964, interests, costs and attorneys' fees; and

(c) GRANT injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d) GRANT all other relief this Court deems just.

## COUNT IX
### (Violations of 18 U.S.C. §1962(c))

(a) AWARD Allstate's actual and consequential damages to be established at trial;

(b) AWARD Allstate treble damages pursuant to 18 U.S.C. §1964, interests, costs and attorneys' fees; and

(c) GRANT injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d) GRANT all other relief this Court deems just.

## COUNT X
**(Violations of 18 U.S.C. §1962(d))**

(a) AWARD Allstate's actual and consequential damages to be established at trial;

(b) AWARD Allstate treble damages pursuant to 18 U.S.C. §1964, interests, costs and attorneys' fees; and

(c) GRANT injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d) GRANT all other relief this Court deems just.

## COUNT XI
**(Violations of 18 U.S.C. §1962(c))**

(a) AWARD Allstate's actual and consequential damages to be established at trial;

(b) AWARD Allstate treble damages pursuant to 18 U.S.C. §1964, interests, costs and attorneys' fees; and

(c) GRANT injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d) GRANT all other relief this Court deems just.

## COUNT XII
**(Violations of 18 U.S.C. §1962(d))**

(a) AWARD Allstate's actual and consequential damages to be established at trial;

(b) AWARD Allstate treble damages pursuant to 18 U.S.C. §1964, interests, costs and attorneys' fees; and

(c) GRANT injunctive relief enjoining the defendants from engaging in the wrongful conduct

alleged in the Complaint; and

(d) GRANT all other relief this Court deems just.

## COUNT XIII
### (Violations of 18 U.S.C. §1962(c))

(a) AWARD Allstate's actual and consequential damages to be established at trial;

(b) AWARD Allstate treble damages pursuant to 18 U.S.C. §1964, interests, costs and attorneys'

fees; and

(c) GRANT injunctive relief enjoining the defendants from engaging in the wrongful conduct

alleged in the Complaint; and

(d) GRANT all other relief this Court deems just.

## COUNT XIV
### (Violations of 18 U.S.C. §1962(d))

(a) AWARD Allstate's actual and consequential damages to be established at trial;

(b) AWARD Allstate treble damages pursuant to 18 U.S.C. §1964, interests, costs and attorneys'

fees; and

(c) GRANT injunctive relief enjoining the defendants from engaging in the wrongful conduct

alleged in the Complaint; and

(d) GRANT all other relief this Court deems just.

## COUNT XV
### (Violations of 18 U.S.C. §1962(c))

(e) AWARD Allstate's actual and consequential damages to be established at trial;

(f) AWARD Allstate treble damages pursuant to 18 U.S.C. §1964, interests, costs and attorneys' fees; and

(g) GRANT injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the Complaint; and

(h) GRANT all other relief this Court deems just.

## COUNT XVI
### (Violations of 18 U.S.C. §1962(d))

(e) AWARD Allstate's actual and consequential damages to be established at trial;

(f) AWARD Allstate treble damages pursuant to 18 U.S.C. §1964, interests, costs and attorneys' fees; and

(g) GRANT injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the Complaint; and

(h) GRANT all other relief this Court deems just.

## COUNT XVII
### (Violations of 18 U.S.C. §1962(c))

(i) AWARD Allstate's actual and consequential damages to be established at trial;

(j) AWARD Allstate treble damages pursuant to 18 U.S.C. §1964, interests, costs and attorneys' fees; and

(k) GRANT injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the Complaint; and

(l) GRANT all other relief this Court deems just.

## COUNT XVIII
### (Violations of 18 U.S.C. §1962(d))

(i)  AWARD Allstate's actual and consequential damages to be established at trial;

(j)  AWARD Allstate treble damages pursuant to 18 U.S.C. §1964, interests, costs and attorneys' fees; and

(k)  GRANT injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the Complaint; and

(l)  GRANT all other relief this Court deems just.

## COUNT XIX
### (Fraud)

(a)  AWARD Allstate its actual damages in an amount to be determined at trial;

(b)  AWARD Allstate its costs, including but not limited to, investigative costs incurred in the detection of defendants' illegal conduct;

(c)  AWARD Allstate its costs in defending No-Fault suits filed by defendants seeking payment of false and fraudulent invoices; and

(d)  GRANT any other relief this Court deems just.

## COUNT XX
### (Unjust Enrichment)

(a)  AWARD Allstate's actual and consequential damages to be determined at trial;

(b)  GRANT any other relief this Court deems just.

## COUNT XXI
### (Declaratory Judgment)

(a)  DECLARE that St. John Medical Care, P.C., Lenox Wellcare Medical, P.C., CB Chiropractic, LLC, New Age Orthopedic Rehabilitation, P.C., First Aid Medical Care,

P.C., Rosedale Medical, P.C., TDL Medical, P.C., LDT Medical, P.C., and West End Chiropractic, P.C. (collectively "PC Defendants") are operating in violation of Article 15 of New York's Business Corporation Law, New York Public Health Laws, New York Insurance Laws, and other statutory and regulatory provisions;

(b)   DECLARE that the PC Defendants' activities are unlawful;

(c)   DECLARE that Allstate has no obligation to pay pending, previously-denied and/or future No-Fault insurance claims submitted by the PC Defendants; and

(d)   GRANT all other relief this Court deems just and appropriate.

## **JURY TRIAL DEMAND**

The plaintiffs demand a trial by jury on all claims.


[SIGNATURE PAGE FOLLOWS]

SMITH & BRINK, P.C.

_____
Richard D. King, Jr., (RK8381)
Nathan A. Tilden, (NT0571)
1325 Franklin Avenue, Suite 320
Garden City, NY 11530
(347) 710-0050

Attorneys for the Plaintiffs,
*Allstate Insurance Company,*
*Allstate Indemnity Company, Allstate New Jersey*
*Insurance Company, Allstate Property & Casualty*
*Insurance Company, and Allstate Fire & Casualty*
*Insurance Company*

Dated:  March   , 2012